This is an action initiated by the administrator of the estate of Lilly Licata (first count) and the children of Lilly Licata (second count). The fundamental allegations of the first count are as follows: (a) The defendant, an attorney at law, was retained by Lilly Licata to draft her last will and testament; (b) the will failed to provide for the required number of witnesses (General Statutes § 45-161); (c) as a result of this deficiency, the Probate Court refused to admit the will into the Probate Court and declared the will invalid; (d) because of the drafter's negligence, certain assets of the estate have been diverted to persons other than those set forth in the will; (e) *Page 379 
the decedent's estate has suffered loss and damage to the extent of $7500. The second count incorporates the allegations of the first count with the exception of the paragraph relating to damages and alleges that as a result of the defendant's negligence in drafting the will certain assets of the decedent's estate which were, by the will, to have been distributed to the plaintiffs, named as beneficiaries in the will, were diverted to others.
The defendant demurs to the first count on the ground that that count fails to set forth any injuries or damages by the administrator. While it may be true that looking into the future trial it is difficult to see how the estate was damaged to the extent claimed, nevertheless there is an allegation, which of course the demurrer admits, of loss and damage to the decedent's estate in the amount of $7500. The challenge proffered by the defendant's demurrer is predicated on the claim that certain elements of alleged damage are improper rather than on the basis that the complaint sets forth a defective cause of action. The demurrer was not the proper means of raising the question of improper elements of damage. Under the allegations of the complaint, the plaintiff administrator was entitled to at least nominal damages, since every invasion of a legal right imports damage. Urban v. Hartford Gas Co.,139 Conn. 301. An attack relating to the elements of damage should be made by motion and not by demurrer. Seidler v. Burns, 84 Conn. 111; Lessard
v. Tarca, 20 Conn. Sup. 295; cf. Foran v. Carangelo,153 Conn. 356.
The contention of the demurrer with reference to the second count is that the beneficiaries are owed no duty by the defendant and that furthermore there was no privity of contract existing between the plaintiff beneficiaries and the defendant. With reference to count two, it might be well *Page 380 
to point out that the facts alleged therein, as in count one, set forth an action based on negligence arising out of a contractual relationship. Dean
v. Hershowitz, 119 Conn. 398, 406. The question raised by the demurrer to count two, therefore, would seem to pose the question: Can a legatee under a will which is declared invalid and inoperative because of a lack of statutory requisites as to attesting witnesses, a defect allegedly caused by the drafter's negligence, maintain an action against the drafter for the loss sustained by the legatee in being deprived of his legacy under the will? A duty of care to perform such a contract may be justified by projecting into this field the cardinal principles of negligence law, and such a duty would be owed to those foreseeably injured by negligent performance, or nonperformance, in a way over and above the withholding of the benefit contracted for, i.e. the drafting of a proper will, without regard to any question of reliance under the contract. Liability for a negligent performance of a contract, or nonperformance, should be imposed where the injury to the plaintiff is foreseeable and where the contract is an incident to an enterprise of the defendant and there are adequate reasons from policy for imposing a duty of care to avoid the risk thus encountered, as an incident to the enterprise. 2 Harper James, Torts § 18.6, pp. 1052, 1053. That the drafting of wills by an attorney is related to the "enterprise" of the defendant needs no discussion.State Bar Assn. v. Connecticut Bank Trust Co.,145 Conn. 222, 234.
Would the allegations set forth in the complaint permit evidence of a factual situation which would satisfy the requirements of the rule of foreseeability of harm? Noebel v. Housing Authority, 146 Conn. 197. On December 12, 1964, the defendant was consulted by the decedent for the admitted purpose *Page 381 
of providing legacies to her children, and a last will was drafted by counsel, the defendant. The testatrix died February 18, 1965. The will, lacking the required number of witnesses, was declared invalid, and the children lost their legacies. In a real and material way, the loss resulting from the negligence was not the estate's but that of the disappointed beneficiaries. The potency of injury to the legatees if the will were declared invalid was patent. Palsgraf v. Long Island R. Co., 248 N.Y. 339. The will was declared invalid, and the financial damage to the plaintiffs ensued. Can there be any doubt as to what was the proximate cause, juridically considered, of the unfortunate event and that it would be well within the realm of reasonable foreseeability that such harm would be likely to result from the negligence? Orlo v. Connecticut Co.,128 Conn. 231, 237; Miner v. McNamara, 81 Conn. 690.
Does the public policy of the state permit the imposition of a duty under the allegations set forth? There are cogent reasons why it does. A testatrix consults her attorney and is given the assurance that the objects of her affection will receive their just legacies at her death. Neither she nor the beneficiaries, who, in all probability, do not know of the will's provisions or possibly even of the existence of the will, know of the disappointment that lies ahead — that her purpose will be completely thwarted because of the negligence of the drafter. The technical legal knowledge required in the drafting of a will and the atmosphere of privacy desired by a testatrix with relation to both the contents of the will and the safekeeping of the will make it highly improbable that either the testatrix or the beneficiaries would ever be alerted to the almost inevitable results flowing from a defective will. The modus operandi would, in most cases, not lend itself to a detection of the error until it was too late *Page 382 
to rectify — upon the death of the testatrix. Public policy would seem to favor the court's extending its equitable arm to assist innocent parties seeking just damages resulting from an error committed by another and affecting their rights, which error those innocent parties were never themselves able to correct.
"[T]here is in this State a public policy involved in the establishment of every legally executed last will. This is a policy of ancient origin." Tator v.Valden, 124, Conn. 96, 100. The purpose of this policy as enunciated by the orders of the General Court was to see that the estate of the testator was not wasted but improved for the best advantage of the children or legatees of the testator. Ibid. While the invalid will cannot be validated by judicial fiat, the allowing of a cause of action under the circumstances set forth in the complaint would seem to be in accord with the policy of the decision of our highest court to give a party who claims to have suffered a wrong at the hands of another every reasonable opportunity to establish his right to redress. Gesualdi v. Connecticut Co., 131 Conn. 622,631. Sociological impediments and legal considerations which sometimes dictate persuasive reasons as a matter of policy why the claimed cause of action should not be allowed are not present here. Cf. Taylor v. Keefe, 134 Conn. 156, 161.
The defendant contends, nevertheless, that, even admitting the tort, the plaintiffs have no standing to maintain this action because of lack of privity. That the sacrosanct shield of privity which formerly protected the promisor, in an action by a third party, was becoming tarnished was being recognized by jurists in the early part of the century. "The assault upon the citadel of privity is proceeding in these days apace." Ultramares Corporation v.Touche, 255 N.Y. 170, 180 (1931) (Cardozo, C. J.). *Page 383 
Connecticut was one of the states at the vanguard of this legalistic revolution. Baurer v. Devenis,99 Conn. 203 (1923). This process of attrition has continued. Hamon v. Digliani, 148 Conn. 710
(1961). The march found its way even into the legislative halls, and strangers to contracts are now accorded rights previously denied them, in rented motor vehicle cases. General Statutes § 14-154;Levy v. Daniels' U-Drive Auto Renting Co.,108 Conn. 333, 338; Graham v. Wilkins, 145 Conn. 34. Since 1916, when "there came the phenomenon of the improvident Scot who squandered his gold upon a Buick, and so left his name forever imprinted upon the law of products liability,"[1] the bastion of privity has been battered. Prosser, "The Assault upon the Citadel (Strict Liability to the Consumer)," 69 Yale L.J. 1099, 1100.
One state, previously embracing the doctrine of privity; Buckley v. Gray, 110 Cal. 339 (1895); has seen fit to abandon its previous position: "The determination whether in a specific case the defendant will be held liable to a third person not in privity is a matter of policy and involves the balancing of various factors, among which are the extent to which the transaction was intended to affect the plaintiff, the foreseeability of harm to him, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, and the policy of preventing future harm." Biakanja v.Irving, 49 Cal.2d 647, 650 (1958). This general principle must be applied in determining whether a beneficiary is entitled to bring an action against an attorney for negligence in drafting a will. Lucas
v. Hamm, 56 Cal.2d 583 (1961); see Ward v.Arnold, 52 Wash.2d 581 (1958). *Page 384 
The language employed by the court in Fisk'sAppeal, 81 Conn. 433, 440, involving an action based on an oral promise by the husband to an ailing wife to hold the title for the benefit of their children, an obligation he repudiated after her death, is particularly appropriate here in view of the factual situation: "It is insisted that if any cause of action existed against the decedent, it was only one in favor of the estate of Mrs. Fisk. But while the agreement of trust was not made by the appellants, it was made by their dying mother for their sole benefit. They, therefore, have an equitable right of action. . . ."
 The demurrer is overruled in toto.