Diane C. O'HARA
v.
Robert A. STANZIANI et al[1]

No. 3644

Superior Court Department
Trial Court of the
Commonwealth of Massachusetts

July 3, 1980

Counsel of Record
Joseph T. Wood, Plaintiff
Joseph McDonald, Defendant

## MEMORANDUM OF DECISION ON DEFENDANT'S MOTION FOR JUDGMENT NOTWITH-STANDING THE VERDICT

### I. PROCEDURAL BACKGROUND AND STATUS

This is a civil action for legal malpractice. It was commenced by the filing of a paper (p. #1) which was captioned "Tort for Negligence." The plaintiff is the widow of James E. O'Hara (O'Hara), who died on September 8, 1972. The named defendant in the initial pleading (hereafter styled "the complaint") is Robert A. Stanziani, Esq., a practicing attorney (the attorney). He answered (p. #2) seasonably, on January 27, 1975.

Various pre-trial proceedings ensued, of varying description, until on February 20, 1980, the court (Lynch, J.) after hearing allowed the attorney's motion (p. #47) to amend his Answer by adding the affirmative defense that the "claim set forth in the plaintiff's complaint accrued more than two (2) years before the commencement of this action and is therefore barred by the Statute of Limitations."

On March 3, 1980, the plaintiff moved (p. #49) to advance the case for a speedy trial. That motion was allowed by the court (Griffin, J.) on March 14, 1980, and the case was ordered (p. #57) on the jury trial list for the week of May 19, 1980.

On May 27, 1980, jury trial was commenced before the undersigned justice as trial judge. After the plaintiff's opening statement the attorney moved (p. #64) for a directed verdict in his favor on the ground that there was "no privity between the plaintiff and the defendant, and therefore there is no contract which can be enforced in this action." That motion was denied[2] and the attorney's objection noted.

At the close of the plaintiff's evidence the attorney moved (p. #65) for a directed verdict, on six stated grounds. After brief argument, the court denied that motion, stating its reasons therefor.[3] The attorney's objection to the denial of his motion was noted. He then proceeded to present evidence. When all of the evidence was completed, he renewed his motion for directed verdict, which was again denied for the same reasons, and his objection was again noted for the record.

Given the legal issues which are presented by this case, the court determined to present the factual questions which had arisen to the jury on special questions, pursuant to the provisions of Mass. R. Civ. P. 49(a). It was the court's belief that factual answers by the jury would present the most suitable framework upon which to determine the answers to the two paramount legal issues which are central to the outcome of this controversy.

The special questions (p. #69) presented and the jury's answers were as follows:

**Q. 1.** Was the execution of the 1971 will supervised or directed by a person for whose conduct Mr. Stanziani was legally responsible?

**A. 1.** Yes

(If your answer to Q. 1 is "Yes," proceed to Q. 2; if your answer is "No," answer no other questions.)

**Q. 2.** Was such supervision or direction negligently performed?

**A. 2.** Yes

---

[1]Jean M. Fortuna Moro, who was added as a party defendant by motion (p.#7) allowed by the court (Morse, J.) on May 27, 1975. She was defaulted thereafter for failure to comply with discovery requirements and, on January 4, 1980, the court (McGuire, J.) entered a default judgment (p. #43) against her.

[2]See **Upham v. Chateau DeVille Dinner Theatre, Inc.**, Mass. App. Ct. Adv. Sh. (1980) 923, 924 n.2, 928 n.9.

(If your answer to Q. 2 is "Yes," proceed to Qs. 3 and 4; if your answer is "No," answer no other questions.)

**Q. 3.** (a) Had Diane O'Hara discovered, on or before December 16, 1972, that she had a claim for malpractice against Mr. Stanziani?

**A. 3.** (a) Yes

(If your answer is "No," answer Q. 3 (b); if your answer is "Yes," proceed to Q. 4.)

**Q. 4.** What amount of money will fairly and reasonable compensate Diane O'Hara for damage directly caused to her?

**A. 4.** Twenty Thousand and Seven Hundred Dollars ($20,700.00).

Following the affirmation and recording of the jury's answers to the questions, the court ordered that judgment enter for the plaintiff in accordance therewith. Judgment (p. #70) did enter on May 29, 1980.

Seasonably thereafter, the attorney moved (p. #68) that the court enter a judgment in his favor notwithstanding the verdict (answers) of the jury. Mass. R. Civ. P. 50(b).[4] Oral argument was had thereafter on the motion for judgment N.O.V. and counsel for both parties favored the court with a memorandum in support of their respective positions. The court took the motion under advisement.

## II. THE PLAINTIFF'S CLAIM

In order to discuss the first of the two legal issues raised by the attorney's motion for judgment N.O.V., it is necessary to determine what claim the plaintiff has made against the attorney. To that end, the complaint is instructive, being the paper which set out the nature and scope of the claim for relief and which has never been amended insofar as the relief sought against the attorney is concerned.

The pleader[5] makes it abundantly clear in the complaint that the theory of recovery is "Tort for Negligence." Those words appear as the underlined general statement of her claim. In addition, paragraph 8 of the complaint specifically avers that the plaintiff's

damage resulted from "The Defendant's, his agents', servants', and employees' negligence"; paragraph 9 alleges that the plaintiff was obliged to expend great sums of money "as a reult of the Defendant's negligence, or of the negligence of his servants, agents and employees." Indeed, it would be difficult to envision a pleading which is as precise and definite as to the pleader's intention, i.e. to state a claim sounding in tort for negligence.

The reason for the pleader's specificity in the direction of negligence is perhaps easily discerned: the further facts alleged in the complaint are that the plaintiff's husband, O'Hara, "contracted with the defendant to draft a will and to name the Plaintiff as sole beneficiary of his Estate"; that the defendant (or persons for whom he was legally responsible) negligently permitted the plaintiff to sign the will as a witness, thus precluding her from being the sole beneficiary. (Mass. G.L. c. 191, sec. 2.)

Given lack of privity between the plaintiff-beneficiary and the defendant-attorney, it may well have been that the pleader opted for the "negligence" theory, realizing that there was no Massachusetts authority for a recovery under these facts on a strict "contract" theory.

## III. THE OPERATIVE FACTS

The complaint, the uncontradicted evidence, the law, and the jury's

[3]The reasons stated were those set forth in **Soares v. Lakeville Baseball Camp, Inc.,** 369 Mass. 974, 975 (1976); **Smith v. Ariens Co.,** Mass. Adv. Sh. (1978) 1857, 1866; **Young v. Garwacki,** Mass. Adv. Sh. (1980) 729, 731 n.1; **Upham v. Chateau DeVille Dinner Theatre, Inc.,** Mass. Adv. Sh. (1980) 923, 928 n.9; **Power Service Supply, Inc., v. E. W. Wiggins Airways, Inc.,** Mass. App. Ct. Adv. Sh. (1980) 175, 184; and **Kenny v. DiCenso,** Mass. App. Ct. Adv. Sh. (1980) 1023.

[4]The defendant-attorney did not file any motion for a new trial. See Mass. R. Civ. P. 50(b), 3rd sentence.

[5]In fairness, it is to be observed that the plaintiff's trial counsel were successor counsel. Her original attorney, who filed the complaint, is said to be deceased.

answers to the factual questions presented by the pleadings have removed several matters from the area of controversy. The following facts are now established, at least for purposes of this action, to which the legal issues in contest may be addressed: O'Hara (not the plaintiff) contracted with the attorney to draft a will for him. The execution of O'Hara's will was supervised or directed by the attorney's secretary,[6] who was responsible. Her supervision or direction of the will's execution on October 27, 1971, was negligently performed, in that plaintiff, who was named as sole beneficiary in the will, was permitted by the secretary to sign as a subscribing witness to the will, thus voiding the bequest to her, as a matter of law, because she was the testator's wife. G.L. c. 191, sec. 2.[7] O'Hara died on September 8, 1972, leaving surviving him the plaintiff as his widow, and certain children of his by a prior marriage, certain of whom were named in the will as contingent beneficiaries. As a result of the plaintiff's signing as a subscribing witness, she suffered monetary damage in the amount of $20,700. She actually knew, on or before December 16, 1972, that she had a claim for malpractice against the attorney, who was responsible for the negligent act (or failure to act) of the secretary. This action was commenced (on December 17, 1974) more than two years after she actually knew of the existence of the claim. The applicable statute of limitations in 1972 for tort actions was two years;[8] for contract actions, six years.[9]

## IV. THE LEGAL ISSUES

(1) **May an attorney be held liable for negligence in supervising the execution of a will to a known intended beneficiary under that will with whom the attorney has no contractual relationship?**

(2) **Does the two-year "tort" statute of limitations or the six-year "contract" statute apply here?**

## V. DISCUSSION

### (1) The "privity" issue.

The problem posed by the so-called "privity" issue—an issue consistently raised by the attorney in this case from the outset as a bar to the plaintiff's claim—has been well put by a commentator[10] in the legal malpractice field:

"In the course of representing a client, an attorney may commit malpractice which injured someone other than his client. Can the non-client recover for negligence against the lawyer? The traditional rule has been that, since privity of contract is essential to a suit for professional negligence, there can be no liability to a third party outside the attorney-client relationship. The historical explanation for the privity requirement was that, in the absence of a contractual relation between the parties, there is no duty to observe a standard of care which, if breached, would provide the basis for liability in tort. On the practical level, the courts have justified the privity rule on the

---

[6] The defaulted co-defendant, Jean M. Fortuna Moro.

[7] "(A) beneficial devise or legacy to a subscribing witness . . . shall be void unless there are three other subscribing witnesses to the will who are not similarly benefited thereunder." See **Pease v. Allis**, 110 Mass. 157 (1872). A 1976 amendment (St. 1976, c. 515, sec. 5) decreased from three to two the number of additional subscribing witnesses needed to validate a beneficial devise or legacy to a subscribing witness. See, also, **Rosenbloom v. Kokofsky**, 373 Mass. 778 (1977).

[8] G.L. c. 260, sec. 2A. The statute has since been amended (St. 1973, c. 777, sec. 1) to enlarge the period of limitations to three years. That change, however, did not become effective until January 1, 1974, and applies only to causes of action arising on and after said date. Here the cause of action (the jury has settled by its answer) arose no later than December 16, 1972, and is subject to the two-year provision.

[9] G.L. c. 260, sec. 2.

[10] David A. Barry, Esq., "Legal Malpractice in Massachusetts," Mass. Law Review, Vol. 63, No. 1 (Jan.-Feb., 1978) p. 21.

ground that to extend liability beyond the parties to the contract would invite an endless number of legal actions.

"Massachusetts has not expressly decided the issue of whether an attorney can be held liable for negligence to one other than his client . . ."

That issue is, of course, expressly presented here. There was no privity between the plaintiff and the attorney. The contract was between O'Hara, her husband, and the attorney. Is she entitled to recover here in the absence of a contractual relationship?

In this matter of apparent first impression in this jurisdiction, the court is of the opinion that the answer, at least in this case, is in the affirmative. The privity of contract requirement in the context of certain professional negligence has been abandoned in at least one recent decision, **Craig v. Everett M. Brooks Co.**, 351 Mass. 497 (1967). If one transposes the lessons of that decision to the legal malpractice field, lack of privity should not be an absolute bar to an action for legal malpractice, but the class of third party non-clients entitled to recover should be limited in accordance with the criteria set forth in **Craig**. Those limiting criteria are applicable and met here: (1) the attorney[11] was aware of the plaintiff's identity at the time the legal services were performed, (2) the purpose of the legal services was at least partially to benefit the plaintiff, (3) the plaintiff was entitled to rely and in fact did rely upon the attorney's proper performance of those services, and (4) the type and extent of harm which would occur to the plaintiff if the attorney performed negligently were reasonably foreseeable by him. Allowing recovery by the intended beneficiary frustrated by the attorney's (or his agent's) negligent supervision of the execution of a will does not cast upon attorneys the type of unlimited and undeterminate liability which the Supreme Judicial Court was careful to avoid in Craig.

This court's determination that the plaintiff is not barred from recovery here by lack of contractual privity finds support in a recent Superior Court decision, **Gerrior v. Johnson,** Plymouth Superior Court, C.A. 78-8182. There the court (Keating, J.) denied a motion to dismiss in an action for professional malpractice brought by three individuals against an attorney based on allegations that when the defendant-attorney drafted a will he negligently failed to effectuate the intent of the testator to include the plaintiffs as potential beneficiaries. It was not alleged that the plaintiffs in that case retained the defendant to draft the will; rather, it appeared that the attorney was retained by the testator. Noting that it was an open issue in the Commonwealth whether an attorney who was retained to draft a will can be held liable to individuals whom his client intended to be beneficiaries under the will, but who were omitted due to the incompetence of the attorney, the court carefully reviewed the state of the authorities elsewhere,[12] and concluded that "(t)he trend of the law in Massachusetts is to reject privity as a defense in any negligence action, cf. **McDonough v. Whalen,** 365 Mass. 506, 512 (1974); **Craig v. Everett Brooks Co.,** 351 Mass. 501 (1967), and there is no sound reason to allow for its imposition so as to insulate an incompetent attorney. Liability, however, ought to be imposed only if it is foreseeable that the attorney's act, or failure to act, would

---

[11] It must be remembered that the jury has found that the attorney was responsible for the conduct of the secretary in supervising the execution of the will. Her knowledge was his knowledge. Her acts were his acts.

[12] See, e.g., **Lucas v. Hamm,** 56 Cal. 2d 583, 75 Cal. Rptr. 821, 364 P. 2d 685 (1961) (Neither the lack of privity nor the want of attorney-client relationship between the parties precludes beneficiaries under a will that failed on the basis of technical errors in the execution from maintaining an action against the attorney for negligence.); **Licata v. Spector,** 26 Conn. Sup. 378, 225 A. 2d 28 (1966); **Heyer v. Flaig,** 70 Cal. 2d 233, 74 Cal. Rptr. 225, 449 P. 2d 161 (1969).

cause harm to the plaintiffs." In summation the Plymouth court ruled that the duty of due care owed by an attorney drafting a will runs not only to his client, but also to all persons who foreseeably could be harmed by the incompetence.

The continued assault upon the requirement of privity in negligence actions generally was recently evidenced in **Morris v. Holt,** Mass. Adv. Sh. (1980) 697, 700.

The conclusion reached in this case on the privity issue is supported by J. Nolan, Tort Law, Mass. Practice Series No. 37, Ch. 10, sec. 188: "It is suggested that if a similar combination of "facts (to those found in **Craig v. Everett Brooks Co.)** should arise in the context of legal malpractice, the Court should recognize liability, notwithstanding the absence of privity between the plaintiff and negligent attorney."

Accordingly, as to the first issue, the court rules that the plaintiff, in the circumstances of the instant action, is entitled to recover from the negligent attorney despite the absence of a contractual relationship between them.

(2) **The Statute of Limitations Issue.**

Allowing the plaintiff the right to bring suit against the attorney under circumstances where she had no direct contractual relationship with him, what statute of limitations governs her claim? If it is the two-year statute then in effect, the suit must fail because the jury has determined for purposes of this case that she actually knew she had a claim against the attorney more than two years before she commenced her action. If, however, the six-year period of limitations is applicable, she may recover.

The court rules that the two-year statute governs here. The action was commenced as one for tort in negligence; it was maintained as such thereafter without amendment; it is maintainable as a negligence action despite the lack of privity, according to the more enlightened view; and there can be no doubt that there was no direct contractual relationship between the plaintiff and the attorney. Whether one looks at the "gist of the action," "the essential nature of the claim," or attempts to determine what theory the plaintiff elected to pursue (see **Henrickson v. Sears,** 365 Mass. 83, 84 (1974) and **Town of Nantucket v. Beinecke,** Mass. Adv. Sh. (1979) 2623), the answer is that the claim for relief **in this case** was pursued as a **tort** claim.

This rationale is borne out by the analysis in J. Nolan, Tort Law, sec. 189:

> ". . . (R)esolution of the privity requirement should bear directly on this question because if the action is founded entirely upon tort for negligence, there being no privity between the aggrieved plaintiff and attorney, the (2)[13] year statute should control. If the gist' of the action is contractual, it would seem that the 6 year statute is implicated."

In this case, as the court has already observed, the gist of the action is clearly tort. The complaint says so;[14] the facts bear it out. It would be incongruous to rule that the essential nature of the plaintiff's claim was contractual. Were there any privity between the parties here, the court would be prepared to look beyond the mere form of the complaint and ignore the plaintiff's characterizations. In this case, even ignoring rigid procedural distinctions and concerning oneself with substance rather than form (see **McStowe v. Bornstein,** Mass. Adv. Sh. (1979) 1024, 1029),[15] there remains the strong conviction that the plaintiff's claim here is in tort for negligence and not for

---

[13]In the original, Judge Nolan refers to the "3 year statute," his text having been published subsequent to the amendment enlarging the period.

[14]If the plaintiff is allowed to elect her cause of action—see **Hendrickson v. Sears,** 365 Mass. 83, 85 (1974)—then in this case she has elected tort.

[15]The discussion there had to do with a "**client's** claim against an attorney." (underscoring supplied.)

breach of any contract.

Accordingly, the two-year statute of limitations applicable to actions of tort applies in this case. Applying "discovery" concepts to the statute,[16] the plaintiff failed to commence her action against the attorney within the applicable period of time permitted and is, therefore, barred from recovery.

## VI. CONCLUSION

The defendant Stanziani's "Motion for Judgment Notwithstanding the Verdict" (p. #68) is allowed, on the ground that the plaintiff's claim is barred by the statute of limitations, for the reasons heretofore stated.

The clerk is directed to enter a judgment forthwith for the defendant Stanziani, notwithstanding the verdict (answers) of the jury, dismissing the plaintiff's complaint as to him.

**So ordered.**

James P. Lynch
Chief Justice
Superior Court Department

[16]That is to say, the statute "commences to run when the plaintiff knew or should have known of the wrong." **Hendrickson, supra,** 365 Mass. at 91; **Mansfield v. GAF Corp.,** 5 Mass. App. Ct. 551.