PRESCOTT INVESTORS, INC.

v.

Daniel G. BLUM and Aaron,
Blum & Collier

v.

SEWARD & KISSEL and Richard
H. Valentine.

Civ. No. B–90–45 (JAC).

United States District Court,
D. Connecticut.

May 7, 1991.

Jo–Ann L. Bowen, Reid & Riege, Hart-
ford, Conn., for third-party plaintiffs.

John C. Yavis, Jr., Everett E. Newton, Murtha, Cullina, Richter and Pinney, Hartford, Conn., for third-party defendants.

## RULING ON THIRD–PARTY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

JOSÉ A. CABRANES, District Judge:

The primary question presented by the pending motion is whether an attorney may be liable to a non-client accounting firm for negligent rendering of services to a client that the attorney and the accounting firm both have in common. Another question presented is whether, under Connecticut law, the non-client accounting firm is entitled to indemnification from the attorney for damages that the non-client paid to the aggrieved common client.

### Background

The following facts are undisputed. Plaintiff, Prescott Investors, Inc. ("Prescott"), brought this action against its former tax accountants, the defendants and third-party plaintiffs Daniel G. Blum and the firm of Aaron, Blum & Collier ("the Blum firm"), to recover damages for the Blum firm's allegedly negligent failure to prepare tax forms and provide tax planning advice for Prescott's Connecticut corporation tax for three fiscal years (1986, 1987, and 1988). See Complaint (filed January 30, 1991) ("Prescott Complaint").

The Prescott Complaint did not allege any wrongdoing by Prescott's corporate counsel, Seward & Kissel and one of its partners, Richard H. Valentine (collectively "Seward & Kissel"). And Prescott has never claimed that Seward & Kissel was responsible for its tax losses. Indeed, to the contrary, Thomas Smith, Prescott's President and sole shareholder, Statement of Material Facts Not in Dispute of Third–Party Defendants Seward & Kissel and Richard H. Valentine (filed Dec. 3, 1991)

("Undisputed Facts") ¶ 4, has stated that the Blum firm was "responsible for the implementing of everything" relating to Prescott's tax planning and form filing, Undisputed Facts ¶ 67, and that Seward & Kissel "had nothing to do with" the Blum firm's failure to file Prescott's corporate taxes in Connecticut. Undisputed Facts ¶ 68. Moreover, Prescott was satisfied with all legal services rendered by Seward & Kissel. Undisputed Facts ¶ 69.[1]

In the Amended Third–Party Complaint (filed July 25, 1990) ("Third–Party Complaint"), the Blum firm claims that Seward & Kissel was liable for any damages the Blum firm would have to pay to Prescott. Third–Party Complaint ¶ 10. The Blum firm settled the action commenced by the Prescott Complaint for $500,000.

In the third-party complaint, the Blum firm claims that Seward & Kissel was negligent in the independent legal services it provided to Prescott and that this purported negligence caused the Blum firm's failure to provide adequate tax planning and tax form preparation services to Prescott. Third–Party Complaint ¶¶ 8 & 9.

In the first count of the third-party complaint, the Blum firm claims that Seward & Kissel is directly liable to it in tort. Third–Party Complaint ¶¶ 5–10. The second count asks for indemnity, asserting that Seward & Kissel was primarily responsible for Prescott's losses and for the Blum firm's deficient tax advice and form preparation, Third–Party Complaint ¶¶ 12–15. The Blum firm makes these claims notwithstanding the undisputed facts that the Blum firm admitted it had exclusive control of and responsibility for Prescott's tax filings, Undisputed Facts ¶¶ 52–54, that Seward & Kissel had confirmed in correspondence to Prescott that Connecticut imposed corporate taxes, Undisputed Facts ¶¶ 42, 61–62, and that the Blum firm had been

---

1. See also Statement of Material Facts Disputed by Third Party Plaintiffs Daniel Blum and Aaron, Blum & Collier and Third Party Plaintiffs' Additional Undisputed Material Facts, attached to Memorandum of Law of Third–Party Plaintiffs Daniel Blum and Aaron, Blum & Collier in Support of Their Opposition to Seward & Kissel's Motion for Summary Judgment (filed Jan. 7, 1991) ("Disputed Facts") at 3–4 (offering no pertinent dispute to third-party defendants' Undisputed Facts).

independently aware of the Connecticut tax requirements, Undisputed Facts ¶ 63.[2]

On December 3, 1990, Seward & Kissel filed a motion for summary judgment. For the reasons stated below, that motion is granted.

## DISCUSSION

### A.

 Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "[T]he mere existence of *some* allegedly factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (emphasis in original). While the court must view the inferences to be drawn from the facts in the light most favorable to the party opposing the motion, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986), a party may not "rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir.1986), *cert. denied*, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987). The non-moving party may defeat the summary judgment motion by producing sufficient specific facts to establish that there is a genuine issue of material fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Finally, " 'mere conclusory allegations or denials' " in legal memoranda or oral argument are not evidence and cannot by themselves create a genuine issue of material fact where none would otherwise exist. *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438,

445 (2d Cir.1980) (quoting *SEC v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir.1978)).

A full review of the record as it now stands—including, *inter alia*, the Memorandum of Law of Third–Party Plaintiffs Daniel Blum and Aaron, Blum & Collier in Support of The Opposition to Seward & Kissel's Motion for Summary Judgment (filed Jan. 7, 1991) ("Third–Party Plaintiff's Response") and the exhibits and statement of facts in dispute attached thereto—reveals that there are no genuine issues of material fact which could be said to defeat third-party defendants' motion for summary judgment. *See Celotex v. Catrett*, 477 U.S. 317, 322–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The undisputed facts make clear that third-party plaintiffs have failed to establish, with respect to Count One of the Third–Party Complaint, that they were owed a duty by third-party defendants, much less that any alleged duty was breached, or, with respect to Count Two of the Third–Party Complaint, that there is any basis for their claim for indemnification.

### B.

 In a diversity case a district court looks to the forum state to select choice of law rules. *Klaxon Co. v. Stentor Elec. Mfg.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Lund's Inc. v. Chemical Bank*, 870 F.2d 840, 845 (2d Cir.1989) ("A federal district court deciding a diversity case applies the same choice of law rules as the state courts in the state in which it sits."). It is not disputed in this case that the substantive law of Connecticut applies. *See generally O'Connor v. O'Connor*, 201 Conn. 632, 519 A.2d 13 (1986); *Whitfield v. Empire Mut. Ins. Co.*, 167 Conn. 499, 356 A.2d 139 (1975); *Feldt v. Sturm, Ruger & Co.*, 721 F.Supp. 403, 405–06 (D.Conn.1989) (explaining that Connecticut courts have not abandoned the traditional *lex loci delicti* rule for choice of law questions in tort cases except where that rule would produce an arbitrary, irrational result); *Katz v. Gladstone*, 673 F.Supp. 76, 79–80 n. 2

---

**2.** *See also* Disputed Facts at 2–3 (offering no dispute).

(D.Conn.1987) (same); Brilmayer, *The Choice of Law Revolution in Connecticut,* 62 Conn.B.J. 373 (1988) (urging caution in abandoning *lex loci* ).

### C.

■ The Blum firm's first claim is that third-party defendants are liable to it in tort for the amount of the settlement—that is, $500,000. The Blum firm argues that "Seward & Kissel failed to advise and negligently advised" Prescott, "a mutual client" of Seward and Kissel and the Blum firm. Third–Party Plaintiffs' Response at 2. According to the Blum firm, "[t]hat failure to advise and negligent advice resulted in Prescott's failure to be recognized by the state of Connecticut as able to conduct its corporate business there. It further resulted in Prescott failing to file corporate tax returns in Connecticut for three fiscal years without the state noticing the delinquency." *Id.*

To succeed on its first claim, the Blum firm must offer evidence from which a jury could reasonably find that Seward & Kissel owed a duty or obligation to the Blum firm and breached that duty or obligation. *Krawczyk v. Stingle,* 208 Conn. 239, 244, 543 A.2d 733, 735 (1988) (Peters, C.J.). However, there are no facts from which such a finding could be made and, hence, Seward & Kissel cannot be liable in tort to the Blum firm.

In most jurisdictions, there are situations in which a non-client who justifiably relies to his detriment on the representation of another party's lawyer may have a cause of action against the lawyer. Such non-clients are sometimes referred to as "derivative" clients. *See* G. Hazard & W. Hodes, The Law of Lawyering: A Handbook on the Model Rules of Professional Conduct 58–60, 321 (1987 Supp.). This situation arises where the lawyer's client is a fiduciary and where the non-client is the beneficiary and does not, therefore, stand at arm's length from the client.

Perhaps the most commonly encountered situation involving fiduciaries occurs when a lawyer represents the fiduciary, but the fiduciary, in turn, has special obligations to the beneficiary. In such cases the fiduciary has usually hired a lawyer for the precise purpose of assisting him in carrying out his duties to the beneficiary.

G. Hazard & W. Hodes, *supra,* at 59; *see also In re Dolan,* 76 N.J. 1, 384 A.2d 1076, 1082 n. 1 (1978) (Pashman, J., concurring) (explaining that since the fiduciary is legally required to serve the beneficiary, the lawyer should proceed with the understanding that he is obligated to the beneficiary as well).

■ In Connecticut, attorneys are not, as a general matter, "liable to persons other than their clients for the negligent rendering of services." *Krawczyk,* 208 Conn. at 244, 543 A.2d at 735. The question before this court is whether an exception to that rule should be made or, in other words, whether an attorney's potential liability to non-clients should effectively be expanded to encompass the allegedly negligent failure of an attorney to file the necessary paperwork to qualify the client to do business in the State of Connecticut. *See* Third–Party Plaintiffs' Response at 6.

While Connecticut has recognized a small number of exceptions to this rule in will cases, *see, e.g.,* *Stowe v. Smith,* 184 Conn. 194, 441 A.2d 81 (1981) (Bogdanski, C.J.) (beneficiaries have claims against attorney who drafted a will which, although valid, provided for benefit shares less generous than the testatrix's expressed intention); *Licata v. Spector,* 26 Conn.Supp. 378, 225 A.2d 28 (Ct. of Common Pleas, Windham Cty., 1966) (Grillo, J.) (beneficiaries have a claim against attorney who drafted a will where attorney failed to get the required number of witnesses and, consequently, the will was invalid), Connecticut has been cautious in expanding attorney liability, and has expressed a continuing concern over "the chilling effect of third party intrusion into an attorney's primary duty of loyalty to the best interests of his or her client." *Mozzochi v. Beck,* 204 Conn. 490, 501, 529 A.2d 171, 176 (1987) (Peters, C.J.).

■ An exception is made to the general rule that attorneys are not liable to non-clients for the negligent rendering of services only when a non-client proves that the attorney owed an independent duty to the

non-client. An independent duty to a non-client would exist if the primary or direct purpose of the attorney-client relationship were to benefit the non-client. *Krawczyk,* 208 Conn. at 245, 543 A.2d at 735; *cf. Glanzer v. Shepard,* 233 N.Y. 236, 238–39, 135 N.E. 275, 275–76 (1922) (Cardozo, J.) (holding that a "public weigher"—who was ordered by a seller to weigh goods sold and was paid for his services by the seller— owed a duty to the third-party buyer to weigh carefully, though there was no privity between the weigher and the buyer, because the weighers were "acting not casually nor as mere servants, but in the pursuit of an independent calling ... at the order of one with the very end and aim of shaping the conduct of another"; "[d]iligence was owing, not only to him who ordered, but to him also who relied"). The Blum firm has failed to meet even the threshold requirement, for it has provided no facts from which a reasonable jury could find that the primary purpose of the attorney-client relationship between Prescott and Seward & Kissel was to benefit the Blum firm.

Assuming only for the argument that Richard Valentine advised the Blum firm at the solicitation of the President of Prescott, Third–Party Plaintiff's Response at 2, the Blum firm provides no evidence that any such advice was related in any way to the alleged source of the losses suffered by Prescott—losses which the Blum firm claims "were the result of the negligent failure on the part of Seward & Kissel to file the necessary paperwork to qualify Prescott to do business...." and thereby "assure[ ] accountability of Prescott to the state tax collector." *Id.* at 6.

Even were it arguable—and it is not— that the primary purpose of the attorney-client relationship between Seward & Kissel and Prescott was to benefit the Blum firm, there would still be no basis for expanding, extending, or modifying the general rule in Connecticut that attorneys are not liable to non-clients for the negligent rendering of services. *Krawczyk,* 208 Conn. at 244, 543 A.2d at 735. The court in *Krawczyk* made clear that "[d]etermining when attorneys should be held liable to parties with whom they are not in privity is a question of public policy." *Id.* at 245, 543 A.2d at 735. When considering this public policy question, courts consider the following factors: "the foreseeability of harm, the proximity of the injury to the conduct complained of, the policy of preventing future harm and the burden on the legal profession that would result from the imposition of liability." *Id.* at 245–46, 543 A.2d at 735 (citations omitted).

The Blum firm has provided no evidence or persuasive argument to support the proposition that any of these factors call for placing liability on Seward & Kissel in this case. In light of the Connecticut Supreme Court's unwillingness in *Krawczyk* to expand an attorney's potential liability to non-clients "to encompass [an attorney's] negligent delay in completing and furnishing estate planning documents for execution by the client," *id.* at 245, 543 A.2d at 735, it seems clear that the Connecticut Supreme Court would—substantially for the reasons stated in Third–Party Defendants' Memorandum of Law at 19–27—decline to expand an attorney's potential liability in a case such as this. *See generally Continental Casualty Co. v. Pullman, Comley, Bradley & Reeves,* 929 F.2d 103, 105–06 (2d Cir.1991) (for reasons substantially similar to those articulated in the instant ruling, affirming district court's dismissal of an excess insurance carrier's tort claim under Connecticut law against a law firm hired by the primary insurer to represent the insured). A federal district court applying state law is not, of course, at liberty to develop or expand state law beyond the contours established by the state's highest court. *See Commissioner v. Bosch,* 387 U.S. 456, 464–65, 87 S.Ct. 1776, 1782–83, 18 L.Ed.2d 886 (1967).

For these reasons, Seward & Kissel's motion for summary judgment with respect to the Count One of the Third–Party Complaint is granted.

### D.

The judgment must also be granted with respect to Count Two of the Third–Party Complaint, because the Blum firm has failed to offer any basis for its claim for indemnification. The Connecticut Supreme Court has reviewed the conditions

**1558**

necessary for a right of indemnification to exist:

> Ordinarily there is no right of indemnity or contribution between joint tort-feasors. Where, however, one of the defendants is [1] in control of the situation and [2] his negligence alone is the direct immediate cause of the injury and [3] the other defendant does not know of the fault, has no reason to anticipate it and may reasonably rely upon the former not to commit a wrong, it is only justice that the former should bear the burden of damages due to the injury.

*Ferryman v. Groton,* 212 Conn. 138, 142–43, 561 A.2d 432, 434 (1989) (citations and quotation marks omitted); *see also Swift v. Levesque,* 614 F.Supp. 172, 175 (D.Conn. 1985) (indemnification is permitted only where "the party with 'secondary' or 'passive' liability had no 'control of the situation' "). Even assuming for the argument that Seward & Kissel were negligent toward Prescott, the undisputed facts highlighted above make clear that the conditions for indemnification are not satisfied in this case. *See, e.g.,* Undisputed Facts ¶¶ 52–54, 61–63, 67–69.[3]

CONCLUSION

For these reasons and substantially for the reasons set forth in the Third–Party Defendants' Memorandum of Law and in the Third–Party Defendants' Reply Memorandum in Support of [Their] Motion for Summary Judgment (filed Jan. 22, 1991), the Motion for Summary Judgment of Third–Party Defendants Seward & Kissel and Richard H. Valentine (filed Dec. 3, 1990) is granted.

It is so ordered.

---

**3.** *See also* Disputed Facts at 2–4 (offering no dispute).