SHOEMAKER, EXR., ET AL., APPELLANTS, *v.* GINDLESBERGER, APPELLEE, ET AL.

[Cite as *Shoemaker v. Gindlesberger,* 118
Ohio St.3d 226, 2008-Ohio-2012.]

(No. 2007–0113—Submitted January 8, 2008—Decided May 7, 2008.)

LANZINGER, J.

{¶ 1} This discretionary appeal invites us to review *Simon v. Zipperstein* (1987), 32 Ohio St.3d 74, 512 N.E.2d 636, which establishes that an attorney is not liable to third persons arising from his good-faith performance of acts on behalf of a client. For the reasons that follow, we decline the invitation to overrule *Zipperstein* and instead hold that a beneficiary of a decedent's will may not maintain a negligence action against an attorney for the preparation of a deed that results in increased tax for the estate.

### I. Case Background

{¶ 2} Margaret Schlegel, the decedent, was a client of attorney Thomas Gindlesberger, the appellee. In 1986, Gindlesberger prepared a will for her, and he later drafted two codicils. Her three children, Roy Schlegel, Robert Schlegel, and Anna Mae Shoemaker, were beneficiaries under the will. In 1990, Margaret, who owned two tracts of land, the "Hanna farm" and the "home place," contacted Gindlesberger for assistance with the transfer of some property. Her son Roy was interested in expanding his dairy farm; to assist him, his mother wanted to convey most of the Hanna farm while retaining a life interest in the land. Gindlesberger drafted a general warranty deed that retained a life estate for

Margaret and transferred a joint life estate to Roy and his wife, with a remainder over in fee simple to the survivor.

{¶ 3} Margaret Schlegel died in 2003. When her will was admitted to probate, the Schlegel children learned that estate assets would have to be sold to pay state and federal estate taxes owed on the transfer of the Hanna farm. The appellants, Robert Schlegel, as executor and as a beneficiary, and Anna Mae Shoemaker, as a beneficiary, argued that Gindlesberger was negligent in preparing the document for the transfer of the Hanna farm and in failing to advise their mother of the tax consequences of the transfer.

{¶ 4} The appellants filed a complaint against Gindlesberger alleging that he was negligent because his preparation of the document transferring the Hanna farm to their brother, Roy Schlegel, increased the estate's tax liability. They also sued Roy for unjust enrichment, claiming that he had received the Hanna farm while the estate received the tax liability, which had depleted their inheritance. Because Roy received property and Robert and Anna Mae did not, the appellants complained that their mother's intent to divide her assets evenly had been frustrated by Gindlesberger's faulty advice.

{¶ 5} Roy Schlegel filed a cross-claim for negligence against Gindlesberger, asserting that Robert and Anna Mae's lawsuit claiming depletion of their inheritance was caused by Gindlesberger's lack of knowledge of tax law. Gindlesberger responded that because there was never an attorney-client relationship between the Schlegel children and himself, none of the children had standing to bring a claim of negligence. The trial court denied Roy Schlegel's motion for summary judgment on the unjust-enrichment claim filed by the appellants, finding a genuine issue of material fact.[1] The trial court granted Gindlesberger's motion for summary judgment, dismissing the negligence claims filed by the Schlegel children. In granting Gindlesberger's motion, the court, citing *Simon v. Zipperstein*, 32 Ohio St.3d 74, 512 N.E.2d 636, held that there was "no evidence that an attorney-client relationship or sufficient privity with an attorney-client relationship, existed between Defendant Gindlesberger and the Plaintiffs Robert and Anna Mae Shoemaker, or Defendant Roy Schlegel."

{¶ 6} On appeal, the appellants[2] claimed that the trial court erred in granting Gindlesberger's motion for summary judgment, arguing that the general rule of privity applied by the trial court should be abandoned in favor of a rule that allows beneficiaries to sue an attorney who is negligent in creating an estate plan.

---

1. That claim is stayed pending the resolution of this appeal.

2. In the years since the trial court action, Robert Schlegel has died, and the appellants, who have been substituted as parties, are Anna Mae Shoemaker, as executor of the estate and in her own right, and Nola M. Schlegel, executor of Robert Schlegel's estate.

The appellate court disagreed, holding that the only person having an attorney-client relationship with Gindlesberger was their deceased mother, Margaret.

{¶ 7} We accepted this case as a discretionary appeal. The appellants propose that a beneficiary of a decedent's will may maintain an action against an attorney who is negligent in the creation of the estate plan even though the beneficiary is not in privity with the attorney's client. Gindlesberger responds that the limited exception to the strict rule of privity, which imposes liability only if a lawyer acts fraudulently or maliciously, should not be expanded. We agree with Gindlesberger.

## II. Legal Analysis

{¶ 8} To establish a cause of action for legal malpractice based on negligence, the following elements must be proved: (1) an attorney-client relationship, (2) professional duty arising from that relationship, (3) breach of that duty, (4) proximate cause, (5) and damages. *Vahila v. Hall* (1997), 77 Ohio St.3d 421, 427, 674 N.E.2d 1164; *Krahn v. Kinney* (1989), 43 Ohio St.3d 103, 105, 538 N.E.2d 1058. If a plaintiff fails to establish a genuine issue of material fact as to any of the elements, the defendant is entitled to summary judgment on a legal-malpractice claim.

{¶ 9} The appellants assert that because Gindlesberger improperly drafted the will and a deed that allowed Margaret Schlegel to retain an interest in the Hanna farm, they have suffered damages in the form of increased estate tax liabilities. But attorneys in Ohio are not liable to a third party for the good-faith representation of a client, unless the third party is in privity with the client for whom the legal services were performed. *Scholler v. Scholler* (1984), 10 Ohio St.3d 98, 10 OBR 426, 462 N.E.2d 158, paragraph one of the syllabus. This rule is rooted in the attorney's obligation to direct attention to the needs of the client, not to the needs of a third party not in privity with the client. *Simon v. Zipperstein*, 32 Ohio St.3d at 76, 512 N.E.2d 636.

{¶ 10} The Schlegel children all concede they had no attorney-client relationship with Gindlesberger and that they must, therefore, demonstrate privity with his client, Margaret Schlegel, or malice on the part of Gindlesberger. Black's Law Dictionary defines privity as "[t]he connection or relationship between two parties, each having a legally recognized interest in the same subject matter." (8th Ed.2004) 1237. In *Zipperstein*, 32 Ohio St.3d 74, 512 N.E.2d 636, this court addressed privity in a similar context. An attorney prepared a will for a client who had a son, and upon the father's death, the son's guardian filed suit against the attorney for legal malpractice in the drafting of the will. Id. at 74–75, 512 N.E.2d 636. The court held that the son's guardian could not sue the attorney because the son did not have a vested interest in the estate and thus was not in privity with the client. Id. at 77, 512 N.E.2d 636. The same applies here—the

appellants were not in privity with their mother, the client, because they were only potential beneficiaries to her will and their rights as beneficiaries did not vest until her death. Margaret Schlegel retained the right to revoke or amend her will during her lifetime. For these reasons, the appellants do not have standing to file their negligence suit against Gindlesberger.

{¶ 11} The necessity for privity may be overridden if special circumstances such as "fraud, bad faith, collusion or other malicious conduct" are present. *Zipperstein,* 32 Ohio St.3d at 76, 512 N.E.2d 636. The appellants, however, did not plead fraud, bad faith, collusion, or malice.

{¶ 12} The appellants' argument rests on two public-policy grounds. They advocate for a change in what some refer to as Ohio's antiquated rule on privity, arguing that Ohio law should grant beneficiaries standing to sue an attorney who allegedly was negligent in providing services to a decedent. In support of their position, they present a survey of several jurisdictions that allow beneficiaries to bring malpractice claims. It is true that Ohio is in the minority of states retaining a strict privity rule, but Ohio was also in the minority of states when *Zipperstein* was decided over 20 years ago.

{¶ 13} Appellants' second reason for asking for an exception to the privity rule is the need to have attorney accountability in the area of estate planning and wealth transfer. Because any mistakes that an attorney makes in drafting a will or giving advice about an estate plan generally do not arise until after the death of the client, the harm from an attorney's errors will most likely befall the intended beneficiaries. The appellants argue that an attorney who drafts a will for a client is aware that his or her professional competence affects not only the client but also those whom the client intends to benefit from the will. They argue, consequently, that they should be permitted to maintain a suit against an attorney who negligently drafts or supervises the preparation of a will, to hold the attorney accountable for negligence.

{¶ 14} Public policy justifies adherence to the privity rule, as stated by courts in jurisdictions that apply the strict privity requirement.[3] Primarily, the rule is used to protect the attorney's duty of loyalty and the attorney's effective advocacy for the client. *Lewis v. Star Bank, N.A., Butler Cty.* (1993), 90 Ohio App.3d 709, 712–713, 630 N.E.2d 418. The strict privity rule ensures that attorneys may represent their clients without the threat of suit from third parties who may compromise that representation. *Barcelo v. Elliott* (Tex.1996), 923 S.W.2d 575, 578–579. Otherwise, an attorney's preoccupation or concern with

---

3. *Robinson v. Benton* (Ala.2002), 842 So.2d 631, 637; *McDonald v. Pettus* (1999), 337 Ark. 265, 275, 988 S.W.2d 9; *Nevin v. Union Trust Co.* (Me.1999), 726 A.2d 694, 701; *Noble v. Bruce* (1998), 349 Md. 730, 757–758, 709 A.2d 1264; *Belt v. Oppenheimer, Blend, Harrison & Tate, Inc.* (Tex.2006), 192 S.W.3d 780, 783.

potential negligence claims by third parties might diminish the quality of legal services provided to the client if the attorney were to weigh the client's interests against the possibility of third-party lawsuits. See *Zipperstein*, 32 Ohio St.3d at 76, 512 N.E.2d 636.

{¶ 15} Second, without the strict privity rule, the attorney could have conflicting duties and divided loyalties during the estate planning process. Third, there would be unlimited potential liability for the lawyer. See generally *Sav. Bank v. Ward* (1879), 100 U.S. 195, 203, 25 L.Ed. 621 (without privity of contract, "absurd consequences to which no limit can be seen" will ensue). In *Ward,* the United States Supreme Court, in its seminal case discussing privity, noted that "[t]he only safe rule is to confine the right to recover to those who enter into the contract; if we go one step beyond that, there is no reason why we should not go fifty." Id. Rather than expose the lawyer to the 50, we conclude that lawyers should know in advance whom they are representing and what risks they are accepting.

{¶ 16} The comment to Ohio's conflict-of-interest rule, Prof.Cond.R. 1.7, states: "The principles of loyalty and independent judgment are fundamental to the attorney-client relationship and underlie the conflict-of-interest provisions of these rules. Neither the lawyer's personal interest, the interests of other clients, nor the desires of third persons should be permitted to dilute the lawyer's loyalty to the client." The rules of professional responsibility, therefore, also underscore the need to ensure that a lawyer is not liable to parties who are not in privity with the lawyer's client.

{¶ 17} We decline the appellants' invitation to relax our strict privity rule. Although the court of appeals commented that this rule does not allow a remedy for the wrong, that is not necessarily so. Other courts have suggested that a testator's estate or a personal representative of the estate might stand in the shoes of the testator in an action for legal malpractice in order to meet the strict privity requirement. See *Noble v. Bruce* (1998), 349 Md. 730, 758–759, 709 A.2d 1264; *Belt v. Oppenheimer, Blend, Harrison & Tate, Inc.* (Tex.2006), 192 S.W.3d 780, 784. These cases have suggested that the claims should be brought in the name of the estate. See *Nevin v. Union Trust Co.* (Me.1999), 726 A.2d 694, 701 (holding that the better rule is to allow only personal representatives, not beneficiaries, to sue for estate planning malpractice, because what may be good for one beneficiary is not necessarily good for the estate as a whole). This may well be a solution to the problem, but it is a question for another day.

{¶ 18} While recognizing that public-policy reasons exist on both sides of the issue, we conclude that the bright-line rule of privity remains beneficial. The rule provides for certainty in estate planning and preserves an attorney's loyalty to the client. In this case, for example, Gindlesberger maintains that he did

exactly what Margaret Schlegel wished. She wished to transfer the Hanna farm but also wanted to retain a life estate. The deed Gindlesberger prepared accomplished just that. Moreover, appellants' claim is that the deed and the will drafted by Gindlesberger created a tax liability for the estate that depleted its assets. It is conceivable that a testator may not wish to optimize tax liability, instead seeking to further a different goal. In those instances, what is good for one beneficiary may not be good for another beneficiary, or for the estate as a whole. In this case, the basis for extending liability is even more tenuous because the increased tax liability to the estate arose from the transfer of the Hanna farm, not from the decedent's will.

{¶ 19} A holding that attorneys have a duty to beneficiaries of a will separate from their duty to the decedent who executed the will could lead to significant difficulty and uncertainty, a breach in confidentiality, and divided loyalties. See *Nevin*, 726 A.2d at 701.

### III. Conclusion

{¶ 20} To overrule *Zipperstein* and develop a new rule relaxing the well-established privity requirement would require an overruling of a precedent based solely on public policy. We decline to change the rule of law in this state that bars an action for negligence against a lawyer by a plaintiff who is not in privity with the client.

{¶ 21} We therefore hold that a beneficiary of a decedent's will may not maintain a negligence action against an attorney for the preparation of a deed that results in increased tax liability for the estate.

{¶ 22} Therefore, we affirm the judgment of the Court of Appeals for Holmes County.

Judgment affirmed.

O'CONNOR, O'DONNELL, and CUPP, JJ., concur.

MOYER, C.J., and PFEIFER and LUNDBERG STRATTON, JJ., concur separately.

---

**MOYER, C.J., concurring.**

{¶ 23} I agree with the majority that we should reject the exception to the privity rule proposed by the appellants. Under the proposed exception, an attorney could be liable to his client's beneficiaries for negligence in connection with a large and loosely defined group of transactions; the appellants do not present compelling reasons for creating such a broad exception to the privity rule. Nevertheless, I write separately to distinguish the exception proposed by the appellants in this case and the one considered in *Simon v. Zipperstein* (1987),

32 Ohio St.3d 74, 512 N.E.2d 636, and to acknowledge that, in a case with different facts, there would be compelling reasons for adopting the exception we rejected in *Zipperstein*.

{¶ 24} In the present case, the beneficiaries seek to hold the decedent's attorney liable for negligence *in a financial transaction independent of the will*. In particular, the beneficiaries alleged negligence in the attorney's preparation of a deed that transferred the decedent's property to her son and reserved a life estate for the decedent. In *Zipperstein*, the beneficiary sought to hold the decedent's attorney liable for negligence *in the preparation of the will*. Among other things, the beneficiary sought damages for the attorney's failure to include a provision in the will renouncing an existing antenuptial agreement. *Zipperstein*, 32 Ohio St.3d at 75, 512 N.E.2d 636.

{¶ 25} The appellants cite no case in which a court in any jurisdiction allows beneficiaries to sue the decedent's attorney for negligence in a financial transaction independent of the will. Instead, the appellants cite cases in which courts in other jurisdictions recognized a cause of action that is almost identical to the one considered in *Zipperstein*: in each case, the court allowed either a beneficiary or an intended beneficiary to sue the decedent's attorney for errors in the preparation of a will or codicil. See *Lucas v. Hamm* (1961), 56 Cal.2d 583, 15 Cal.Rptr. 821, 364 P.2d 685; *Guy v. Liederbach* (1983), 501 Pa. 47, 51, 459 A.2d 744; *Succession of Killingsworth* (La.1973), 292 So.2d 536; *Ogle v. Fuiten* (1984) 102 Ill.2d 356, 80 Ill.Dec. 772, 466 N.E.2d 224; *McAbee v. Edwards* (Fla.App.1976), 340 So.2d 1167; and *Licata v. Spector* (1966), 26 Conn.Supp. 378, 225 A.2d 28. The appellants assert, without significant explanation, that if we approve of the result in any of these cases, we should find a cause of action here: "The only difference * * * is that here the error was not in the drafting of a will but in not understanding the import of another type of document prepared in furtherance of the attorney's client's dispositive scheme. This * * * is a difference without distinction." I disagree with the appellants' assertion. The cause of action proposed by the appellants is readily distinguishable from those recognized in the aforementioned cases.

{¶ 26} First, the appellants' broad description of the error in this case demonstrates that a cause of action based on the present facts would have a far greater scope than the cause of action recognized in any of the above cases. In the appellants' description of the error as a failure to "understand[ ] the import of another type of document prepared in furtherance of the attorney's client's dispositive scheme," the phrase "another type of document" provides no threshold limitation. The phrase "in furtherance of the attorney's client's dispositive scheme" would also be difficult to define or limit and would almost certainly

include transactions in which attorney errors and the resultant damage were readily discoverable before the death of the client.

{¶ 27} Second, damage to beneficiaries is more readily foreseeable in a will-drafting case than in the present case. The Supreme Court of California has held that because one of the main purposes of a will is to transfer property to the named beneficiaries, damage to those beneficiaries in the event of attorney negligence in drafting the will is "clearly foreseeable." *Lucas*, 56 Cal.2d at 589, 15 Cal.Rptr. 821, 364 P.2d 685. Here, the main purpose of the transfer of land was to benefit the decedent and her son—not the other beneficiaries. The damage to the beneficiaries described in the present case is therefore far less foreseeable than the damage to the beneficiaries in a case where an attorney was negligent in preparation of the will.

{¶ 28} Despite these objections to the cause of action proposed by appellants, I believe that there would be compelling reasons to recognize a cause of action by an intended beneficiary against the decedent's attorney for negligence in preparation of a will.

{¶ 29} Courts in many states have recognized a cause of action for beneficiaries alleging attorney error in the preparation of a will or codicil. The Supreme Court of California, when it held that a decedent's beneficiaries have a cause of action against the decedent's attorney for negligently preparing testamentary instruments, noted that such a cause of action does not impose a new or unexpected burden on the decedent's attorney. *Lucas*, 56 Cal.2d at 589, 15 Cal.Rptr. 821, 364 P.2d 685. See also *Licata*, 26 Conn.Supp. 378, 225 A.2d 28 (holding that a decedent's beneficiaries can sue the decedent's attorney for negligently preparing a will).

{¶ 30} The Supreme Court of Pennsylvania, holding that a named beneficiary may, as an intended third-party beneficiary, sue the decedent's attorney, rejected the idea that its holding would impose a costly and undesirable burden on attorneys: "Overarching all of appellants' arguments is the basic policy argument that allowing suits such as appellee's would perhaps lower the quality of legal services rendered to clients because of attorneys' increased concern over liability to third persons, and certainly make them much more expensive. We cannot accept the proposition that insuring the quality of legal services requires allowing as limited a number of persons as possible to bring suit for malpractice." (Citations omitted.) *Guy*, 501 Pa. at 62–63, 459 A.2d 744.

{¶ 31} In the dissent to this court's decision in *Zipperstein*, Justice Brown argued that, in an action by an intended beneficiary alleging negligence in the preparation of a testamentary instrument, no real conflict of interest exists: "Where the attorney's job is to draft a will, * * * the needs of the client simply require the attorney to competently construct an instrument that will carry out

the client's intentions as to the distribution of his or her property upon death. If the attorney negligently fails to fulfill those needs, with the result that an intended beneficiary receives less than the client desired, surely the client, if he or she were still alive, would *want* the intended beneficiary to bring an action against the attorney." (Emphasis sic.) 32 Ohio St.3d at 78, 512 N.E.2d 636.

{¶ 32} Justice Brown also recognized that there were significant policy reasons to recognize an intended beneficiary's cause of action for negligence. In particular, he argued that without such a cause of action, attorneys who commit malpractice in preparing a will are immune from liability. 32 Ohio St.3d at 77, 512 N.E.2d 636. He also noted that we have recognized causes of action by third parties against physicians, architects, and accountants, despite a lack of privity: "In the law of torts, the use of privity as a tool to bar recovery has been riddled (and rightly so) to the extent that we are left with legal malpractice as, perhaps, the only surviving relic." Id.

{¶ 33} I am persuaded that, as Justice Brown argued, the issue of an attorney's conflict of interest does not arise if an intended beneficiary has a cause of action in negligence for an attorney's preparation of a will. I am also persuaded that there is a strong need for attorney accountability in preparing wills. It serves no purpose to continue to invoke a strict rule of privity to protect the malpractice of a lawyer when we have abrogated that rule with respect to the liability of other professionals, such as accountants and architects. For this reason, if presented with a different set of facts, I would be in favor of revisiting our decision in *Zipperstein* in the context of the holding of *Westfield Ins. Co. v. Galatis,* 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256.

PFEIFER and LUNDBERG STRATTON, JJ., concur in the foregoing opinion.

---

Ronald L. Rosenfield Co., L.P.A., and Ronald L. Rosenfield, for appellants.

John C. Nemeth & Associates, John C. Nemeth, and Michael J. Collins, for appellee.

Frederick M. Morgan Jr.; and Volkema Thomas, L.P.A., and Michael S. Miller, urging reversal on behalf of amicus curiae, Ohio Association for Justice.