[Cite as *Moore v. Michalski*, 2018-Ohio-3021.]

COURT OF APPEALS
FAIRFIELD COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
| KATHARINE MOORE, EXECUTOR OF THE ESTATE OF ROBERT L. MOORE | : : : : | JUDGES: Hon. John W. Wise, P.J. Hon. W. Scott Gwin, J. Hon. Patricia A. Delaney, J. |
| Plaintiff-Appellee | : : | Case No. 17-CA-44 |
| -vs- | : : | |
| RAYMOND RICHARD MICHALSKI, ET AL | : | OPINION |
| Defendant-Appellant | | |

CHARACTER OF PROCEEDING:     Civil appeal from the Fairfield County Court
                             of Common Pleas, Case No. 2016CV00175

JUDGMENT:                    Affirmed in part; Reversed in part;
                             Remanded

DATE OF JUDGMENT ENTRY:      July 30, 2018

APPEARANCES:

For Plaintiff-Appellee              For Defendant-Appellant

ROBERT G. COHEN                     DAVID HERD
JASON BEEHLER                       JOHN C. NEMETH
65 East State Street, Ste. 1800     175 S. Third Street, Ste. 285
Columbus, OH 43215                  Columbus, OH 43215


SHEILA DESELICH COHEN
1657 Wingate Drive
Delaware, OH 43015

*Gwin, J.*

{¶1} Appellants, Raymond Richard Michalski and Dagger Johnson Miller Ogilvie and Hampson, LLP [collectively "Appellants"] appeal following a jury verdict finding them liable for professional negligence and awarding damages including attorney fees. Appellee is Katharine Moore in her capacity as Executor of the Estate of her father, Robert L. Moore.

*Facts and Procedural History*

{¶2} In 2010, Robert L. Moore engaged the Dagger Johnston law firm ("Dagger") to re-write his Last Will and Testament in order to leave his home and the 31/2 acres of land on which it was situated (collectively, the "Property") to his two children. Dagger assigned the task to attorney Ray Michalski. Instead of leaving Moore's Property to his children, Michalski's secretary or probate assistant made minor revisions to Moore's existing Will that left the Property to Moore's then estranged second wife, Joan Ellis ("Ellis").

{¶3} Confronted with Ellis's claim to the Property, the Estate filed a declaratory judgment action asking the probate court to interpret the 2010 Will. Faced with the reality that (1) the 2010 Will drafted by Michalski had, in fact, left the Property to Ellis, (2) the probate judge instructed plaintiff and Ellis to work things out, and (3) the Executor had a fiduciary obligation to preserve as much of the Estate as possible, Appellee was forced to compromise. In the settlement that was ultimately negotiated, the Estate retained some of the value of the Property, but was required to make cash payments to Ellis and her attorneys. The settlement required the Estate to: (1) pay a portion of the proceeds from the sale of the Property to Ellis; (2) pay Ellis's attorneys' fees in the probate

proceedings; and (3) waive the Executor's fees.  In addition, the Estate incurred its own attorneys' fees and costs in the probate proceedings because of Michalski's malpractice and Ellis' consequent claim to the Property.  The Property was sold to pay the settlement.

{¶4}    Appellee filed its Complaint against Appellants on March 22, 2016. Generally, the Complaint alleged legal malpractice by Appellees in the drafting of a Will for the decedent, Robert L. Moore.  Appellants never properly filed an Answer in the case. *See,* 1T. at 42-53.  The trial court dismissed Katharine Moore, individually, as a plaintiff on the pleadings by entry of August 8, 2016.  Appellants then moved for summary judgment against The Estate of Robert L. Moore on June 12, 2017, arguing against attorney fees incurred in presenting the malpractice case and that the claims had been waived by settlement.  The trial court denied the Motion for Summary Judgment by Entry and Order of August 14, 2017.

{¶5}    Prior to the start of trial, the Appellee waived its motion for default judgment and requested the matter proceed to a jury trial.  (1T. at 50).  The trial court further ruled that the Appellees would not be permitted to make arguments concerning affirmative defenses of waiver or contributory negligence because they were not plead in accordance with Civ.R. 8.  (1T. at 51).

{¶6}    The case proceeded to a jury trial on September 12, 2017, and a final entry verdict and jury interrogatories were filed September 15, 2017.  Specifically, the jury found $8,375.00 in economic loss, $7,000.00 in "non-economic loss",  $70,000.00 for attorney's fees incurred in bringing and maintaining the legal malpractice case, and $5,125.00 in attorney's fees incurred in a probate court dispute with Robert L. Moore's wife, Joan Ellis.

{¶7}  The Appellants submit that this case is on appeal mainly because the trial court improperly allowed the Complaint to proceed to trial on claims for attorney's fees incurred in prosecuting the legal malpractice action, as opposed to fees incurred in attempting to rectify purported malpractice, and in allowing claims for non-economic damages.  (Appellant's Brief at 2).

*Assignments of Error*

{¶8}  Appellant's raise six assignments of error,

{¶9}  "I. THE TRIAL COURT ERRED IN INSTRUCTING THE JURY THAT THEY COULD CONSIDER ATTORNEY FEES INCURRED IN THE PROSECUTION OF THE LEGAL MALPRACTICE CASE AS DAMAGES.

{¶10}  "II. THE TRIAL COURT ERRED IN DENYING SUMMARY JUDGMENT TO APPELLANTS ON THE ISSUE OF MALPRACTICE CASE ATTORNEY FEES AS AN ELEMENT OF DAMAGES.

{¶11}  "III. THE TRIAL COURT ERRED IN ALLOWING THE JURY TO CONSIDER BROWN'S TESTIMONY ON ATTORNEY FEES AS DAMAGES AND THE EXHIBITS RELIED UPON RELATED TO ATTORNEY FEES.

{¶12}  "IV. THE TRIAL COURT ERRED IN NOT PERMITTING MARK RIEGEL, ESQ., A PARTNER AND LITIGATOR WITH THE DAGGER FIRM, TO TESTIFY AS A REBUTTAL EXPERT WITNESS.

{¶13}  "V. THE TRIAL COURT ERRED IN ALLOWING THE JURY TO CONSIDER AND AWARD NON-ECONOMIC DAMAGES TO THE ESTATE.

{¶14}  "VI. THE TRIAL COURT ERRED IN DENYING SUMMARY JUDGMENT, AND FAILING TO INSTRUCT THE JURY, ON THE ESTATE'S WAIVER OF A

MALPRACTICE CLAIM BY SETTLING WITH JOAN ELLIS IN PROBATE PROCEEDINGS."

I.

{¶15} In their First Assignment of Error, Appellants argue the trial court erred in instructing the jury that they could consider attorney fees incurred in the prosecution of the legal malpractice case as damages.

**STANDARD OF APPELLATE REVIEW.**

{¶16} Appellant argument centers on an issue of law, not the discretion of the trial court. In other words, Appellants contend that where a client is required to engage new counsel for a separate action proximately resulting from his attorney's negligence, whether legal fees paid by the plaintiff to prosecute a subsequent legal malpractice action against the offending lawyer may be awarded in the legal malpractice action as an item of special damages is a question of law.

{¶17} "'When a court's judgment is based on an erroneous interpretation of the law, an abuse-of-discretion standard is not appropriate. *See Swartzentruber v. Orrville Grace Brethren Church,* 163 Ohio App.3d 96, 2005-Ohio-4264, 836 N.E.2d 619, ¶ 6; *Huntsman v. Aultman Hosp.*, 5th Dist. No. 2006 CA 00331, 2008-Ohio-2554, 2008 WL 2572598, ¶ 50.' *Med. Mut. of Ohio v. Schlotterer*, 122 Ohio St.3d 181, 2009-Ohio-2496, 909 N.E.2d 1237, ¶ 13." *State v. Fugate,* 117 Ohio St.3d 261, 2008-Ohio-856, 883 N.E.2d 440, ¶6.

**A. Elements of a claim for legal malpractice.**

{¶18} In *Vahila v. Hall*, 77 Ohio St.3d 421, 674 N.E.2d 1164(1997), the Ohio Supreme Court set forth the elements of a claim for legal malpractice,

To establish a cause of action for legal malpractice based on negligent representation, a plaintiff must show (1) that the attorney owed a duty or obligation to the plaintiff, (2) that there was a breach of that duty or obligation and that the attorney failed to conform to the standard required by law, and (3) that there is a causal connection between the conduct complained of and the resulting damage or loss.

*Vahila* at syllabus. In the case at bar, the jury found the Appellants had committed legal malpractice. The issue in Appellant's First Assignment of Error is the measure of damages that may properly be awarded based upon the Appellants' negligence.

**B. Damages recoverable when an attorney commits malpractice.**

**{¶19}** In *Paterek v. Petersen & Ibold,* the Ohio Supreme Court made the following observations,

When an attorney commits malpractice in a civil case, the lion's share of the damages derives from the value of the lost claim.

* * *

This court has recognized that a plaintiff in a legal-malpractice case may seek other types of consequential damages, such as additional attorney fees incurred to correct the mistakes of the malpracticing attorney, *Krahn v. Kinney* (1989), 43 Ohio St.3d 103, 106, 538 N.E.2d 1058, but the jury below did not award any such damages. Thus, the focus of this case is the value of the lost cause of action.

118 Ohio St.3d 503, 2008-Ohio-2790, 890 N.E.2d 316, ¶28.

**{¶20}** In the present case, a specific jury interrogatory plainly states that the attorney fees awarded of $70,000.00 were for "attorney's fees incurred in bringing and maintaining this lawsuit."

**ISSUE FOR APPEAL.**

1. Whether under Ohio law legal fees paid by Appellee to prosecute a legal malpractice action against the offending lawyer may be awarded in the legal malpractice action as an item of special damages.

**{¶21}** Appellants contend that Ohio follows the "American Rule" which provides that each party is responsible for their own attorney's fees except as provided for in certain statutory actions or when the opposing party is found to have acted in bad faith, vexatiously, wantonly, obdurately, for oppressive reasons, or the party somehow engaged in malicious conduct. *Sorin v. Board of Educ. of Warrensville Heights Sch. Dist.* 46 Ohio St.2d 177, 180-81, 347 N.E.2d 527(1976). Attorney fees, which are punitive in nature, may also be awarded where there has been a finding of actual malice and an award of punitive damages. *Digital & Analog Design Corp. v. North Supply Co.*, 63 Ohio St.3d 657, 590 N.E.2d 737(1992).

**{¶22}** Appellees cite to *Paterek v. Petersen & Ibold,* cited above and to *Green v. Bailey,* 1st Dist. Hamilton No. C-070221, 2008-Ohio-3569 in which the Court of Appeals stated,

> Attorney fees incurred to rectify, or to attempt to rectify, the malpractice are recoverable as indirect, or consequential, damages in a legal malpractice action, even when the rectification is achieved through a settlement. But recovery is warranted only where the factfinder is

persuaded that the fees and expenses of the successor attorney were causally related to an established cause of action for malpractice.

Id. at ¶17. We believe the Appellee and the trial court misconstrues both cases by concluding that they allow for the recovery of attorney fees in a legal malpractice action where there is no showing of either actual malice or bad faith, vexatious, wanton, and obdurate, for oppressive reasons, or the party somehow engaged in malicious conduct.

{¶23} The Supreme Court of Tennessee has astutely recognized,

There are three categories of attorney's fees that may constitute damages resulting from legal malpractice: (1) "initial fees" a plaintiff pays or agrees to pay an attorney for legal services that were negligently performed, (2) "corrective fees" incurred by the plaintiff for work performed to correct the problem caused by the negligent lawyer, and (3) "litigation fees," which are legal fees paid by the plaintiff to prosecute the malpractice action against the offending lawyer. The trial court in this case correctly held that corrective fees were recoverable, and this ruling was not appealed. The trial court's ruling that initial fees were not recoverable was appealed, and the Court of Appeals properly reversed. Both lower courts agreed that the plaintiffs could not recover their legal fees in prosecuting the instant malpractice action.

*John Kohl & Co. v Dearborn & Ewing,* 977 S.W.2d 528, 534(Tenn. Sup. Ct.1998). We believe that in both *Paterek* and *Green* the courts were referring to the second category

of attorney fees, "corrective fees" as identified by the Tennessee Supreme Court in *John Kohl & Co.* The Court in *John Kohl & Co.* further noted,

> Although it is true that there is some authority for the proposition that a negligent attorney is responsible for the reasonable legal expenses incurred by a former client in prosecuting a legal malpractice action, *see Bailey v. Pocaro & Pocaro,* 305 N.J.Super. 1, 701 A.2d 916, 919 (1997), most jurisdictions that have considered the issue have adhered to the well-established American rule, which provides that attorney's fees may not be awarded to the prevailing party absent statutory authorization or an agreement between the parties so providing. *See, e.g., Olson v. Fraase,* 421 N.W.2d 820, 828–29 (N.D.1988); *Began v. Dixon,* 547 A.2d 620, 624–25 (Del.Super.Ct.1988); *Whitney v. Buttrick,* 376 N.W.2d 274, 281 (Minn.App.1985); *Stinson v. Feminist Women's Health Center,* 416 So.2d 1183, 1185 (Fla.App.1982); Sorenson v. Fio Rito, 90 Ill.App.3d 368, 45 Ill.Dec. 714, 413 N.E.2d 47, 51–53 (1980). Tennessee courts have long adhered to the American rule, concluding that an award of attorney's fees as part of the prevailing party's damages is contrary to public policy. *See, e.g., Pullman Standard v. Abex Corp.,* 693 S.W.2d 336, 338 (Tenn.1985);*Gray v. Boyle Inv. Co.,* 803 S.W.2d 678, 684 (Tenn.App.1990); *John J. Heirigs Constr. Co. v. Exide,* 709 S.W.2d 604, 609 (Tenn.App.1986); *Pinney v. Tarpley,* 686 S.W.2d 574, 581 (Tenn.App.1984); *Goings v. Aetna Casualty & Sur. Co.,* 491 S.W.2d 847, 848 (Tenn.App.1972); *Raskind v. Raskind,* 45 Tenn.App. 583, 325 S.W.2d

617, 625 (1959). We are not persuaded that legal malpractice claims should be made an exception to the rule. Without an agreement between the parties or a controlling statute, attorney's fees in legal malpractice suits, as in other litigation, may not be awarded.

977 S.W.2d 528, 534-535.

{¶24} The Ohio Supreme Court has made clear that courts may not create exceptions to the American Rule,

We are well aware that the 'American rule' has been criticized in recent years, but, in our view any departure from such a deeply-rooted policy as the exclusion of attorney fees as costs is a matter of legislative concern.

* * *

The General Assembly has expressly provided for the recovery of attorney fees, as part of the costs of litigation, with respect to certain statutory actions. See, e.g., R.C. 163.21, 309.13, 733.61, 1313.51, 5519.02. *See, also, Billington v. Cotner* (1974), 37 Ohio St.2d 17, 305 N.E.2d 805; S*tate, ex rel. White, v. Cleveland* (1973), 34 Ohio St.2d 37, 295 N.E.2d 665; *Shuey v. Preston,* [172 Ohio St.413, 177 N.E.2d 789(1961)] *supra.* In light of the expressed precedent in this state, *State, ex rel. Michaels, v. Morse,* [165 Ohio St. 599, 238 N.E.2d 660(1956)] *supra,* we defer to the General Assembly on the matter of statutory authorization of recovery of attorney fees as part of the costs of litigation.

*Sorin v. Board of Educ. of Warrensville Heights Sch. Dist.*, 46 Ohio St.2d 177, 179-81, 347 N.E.2d 527(1976).

**CONCLUSION.**

{¶25} In the case at bar, the trial court dismissed Appellee's claim for punitive damages. *Entry and Order*, filed Aug 8, 2016 at 7-8(Docket Entry #16). Appellee did not argue that Appellants acted with bad faith, vexatious, wanton, obdurate, for oppressive reasons, or they somehow engaged in malicious conduct. Appellee cites no statutory authority for awarding legal fees in a legal malpractice case.

{¶26} Accordingly, the trial court erred in instructing the jury that they could consider attorney fees incurred in the prosecution of the legal malpractice case as damages.

{¶27} Appellant' First Assignment of Error is sustained.


II., III., IV.

{¶28} "Mootness is a jurisdictional question because the Court 'is not empowered to decide moot questions or abstract propositions." *United States v. Alaska S.S. Co.*, 253 U.S. 113, 116, 40 S.Ct. 448, 449, 64 L.Ed. 808 (1920), *quoting California v. San Pablo & Tulare R. Co.*, 149 U.S. 308, 314, 13 S.Ct. 876, 878, 37 L.Ed. 747 (1893*); Accord, North Carolina v. Rice*, 404 U.S. 244, 246, 92 S.Ct. 92, 30 L.Ed.2d 244(1971).

{¶29} In light of our disposition of Appellant's First Assignment of Error, we find Appellants Second, Third and Fourth Assignments of Error are moot.

V.

{¶30} In their Fifth Assignment of Error, Appellants maintain the trial court erred in allowing the jury to consider and award $7,000.00 in non-economic damages to an estate.

**STANDARD OF REVIEW.**

{¶31} Appellants' argument claims the trial court erred as a matter of law because non-economic damages may not be awarded to a decedent's estate. [Appellant's Brief at 14].

{¶32} "'When a court's judgment is based on an erroneous interpretation of the law, an abuse-of-discretion standard is not appropriate. *See Swartzentruber v. Orrville Grace Brethren Church,* 163 Ohio App.3d 96, 2005-Ohio-4264, 836 N.E.2d 619, ¶ 6; *Huntsman v. Aultman Hosp.*, 5th Dist. No. 2006 CA 00331, 2008-Ohio-2554, 2008 WL 2572598, ¶ 50.' *Med. Mut. of Ohio v. Schlotterer*, 122 Ohio St.3d 181, 2009-Ohio-2496, 909 N.E.2d 1237, ¶ 13." *State v. Fugate,* 117 Ohio St.3d 261, 2008-Ohio-856, 883 N.E.2d 440, ¶6. Because the assignment of error involves the interpretation of a statute, which is a question of law, we review the trial court's decision de novo. *Med. Mut. of Ohio v. Schlotterer*, 122 Ohio St.3d 181, 2009-Ohio-2496, 909 N.E.2d 1237, ¶ 13; *Accord, State v. Pariag,* 137 Ohio St.3d 81, 2013-Ohio-4010, 998 N.E.2d 401, ¶ 9; *Hurt v. Liberty Township, Delaware County, OH,* 5th Dist. Delaware No. 17 CAI 05 0031, 2017-Ohio-7820, ¶ 31.

**A. Nature of a legal malpractice claim.**

**{¶33}** In *Loveman v. Hamilton*, the Ohio Supreme Court defined the nature of a legal malpractice claim,

> Although a client's claim against an attorney has aspects of both a contract action and a tort action, the general rule is that the gist of the action, regardless of its form, is the attorney's breach of his contractual obligation to represent his client in a professional, effective and careful manner. *McStowe v. Bornstein* (Mass.1979), 377 Mass. 804, 388 N.E.2d 674; *Hendrickson v. Sears* (1974), 365 Mass. 83, 310 N.E.2d 131. *See, generally*, Annotation, 18 A.L.R.3d 978; Annotation, 65 A.L.R.2d 1211; 6 Ohio Jurisprudence 3d 674, Attorneys at Law, Section 143.

66 Ohio St.2d 183, 184, 420 N.E.2d 1007(1981). *Loveman* involved the question of whether the malpractice action survived the death of the attorney who allegedly engaged in malpractice. However, the *Loveman* holding applies to mandate the survival of a legal malpractice claim after the death of the party entitled to assert the claim. *Hosfelt v. Miller,* 7th Dist. Jefferson No. 97-JE-50, 2000-Ohio-2619 at *4.

**{¶34}** Therefore, the personal representative of a decedent's estate stands in the shoes of the decedent to assert claims on behalf of the estate. *Hosfelt,* at *4; *Accord, Williams v. Barrick,* 10th Dist. Franklin No. 08AP-133, 2008-Ohio-4592, ¶10.

**B. The trial courts instructions.**

**{¶35}** In the case at bar, the trial court instructed the jury,

> (E) Damages: If you find for the Plaintiff, you will decide by the greater weight of the evidence an amount of money that will reasonably

compensate the estate for the actual injury or loss proximately and directly caused by Defendant Michalski's legal malpractice. In deciding this amount, you will consider Plaintiff's economic loss and non-economic loss, if any, proximately and directly caused by Plaintiff's act injury or loss.

Ladies and gentlemen, economic loss may include the following types of financial harm: (1) All compensation lost as a result of the Plaintiff's injury or loss; (2) all expenditures for services, products or accommodations incurred as a result of the Plaintiff's injury or loss; (3) all expenditures incurred by the Estate/Plaintiff or by another person on behalf of the Plaintiff to repair or replace property of the estate of Robert Moore that was injured or destroyed; (4) expenses, including attorney fees incurred to correct the mistakes of a malpracticing attorney or to rectify or attempt to rectify the malpractice; and (5) any other expenditure incurred as a result of Plaintiff's loss.

*Non-economic loss means harm other than economic loss that results from the Plaintiff's injury or loss, including any intangible loss.*

And so, you are hereby instructed that as to the Plaintiff's claimed damages, you are not to speculate. The law deals in probabilities and not possibilities. If the Plaintiff has not proven the amount of damages that arose out of each event, then the Plaintiff has not sustained its burden and you must find in favor of the Defendant.

5T. at 1005-6 (emphasis added). R.C. 2953.18 provides,

(4) "Noneconomic loss" means nonpecuniary harm that results from an injury or loss to person or property that is a subject of a tort action, including, but not limited to, pain and suffering, loss of society, consortium, companionship, care, assistance, attention, protection, advice, guidance, counsel, instruction, training, or education, disfigurement, mental anguish, *and any other intangible loss.*

Emphasis added. Accordingly, the jury did not award non-economic damages to the Appellee in the case at bar for pain and suffering, loss of society, consortium, companionship, care, assistance, attention, protection, advice, guidance, counsel, instruction, training, or education, disfigurement, mental anguish, because the jury was not instructed on those elements. Further, "juries are presumed to follow their instructions." *Zafiro v. United States* 506 U.S. 534, 540, 113 S.Ct. 933, 122 L.Ed.2d 317(1993). "A presumption always exists that the jury has followed the instructions given to it by the trial court." *Pang v. Minch*, 53 Ohio St.3d 186, 187, 559 N.E.2d 1313(1990), at paragraph four of the syllabus, rehearing denied, 54 Ohio St.3d 716, 562 N.E.2d 163.

## C. CONCLUSION.

{¶36} The trial court correctly instructed the jury concerning Appellee's right to recover for non-economic damages. The trial court's instructions were a correct statement of the law.

{¶37} In the case at bar, evidence was presented regarding the loss of the only remaining portion of the Property, that had been in the decedent's family for over 200 years, and the decedent's final wishes that such Property go to his children and remain in his family. The decedent instructed a lawyer regarding his desire, and the lawyer

drafted a Will that accomplished the opposite of what the decedent intended. The error proximately resulted in the loss of unique property that had economic and noneconomic value to the decedent.

{¶38} Appellant's Fifth Assignment of Error is overruled.

VI.

{¶39} In their Sixth Assignment of Error, Appellants argue that the trial court erred in denying summary judgment and failing to instruct the jury on Appellee's waiver of a malpractice claim by settling with Joan Ellis in probate proceedings.

**STANDARD OF APPELLATE REVIEW.**

{¶40} Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. *Smiddy v. The Wedding Party, Inc.* 30 Ohio St.3d 35, 36, 506 N.E.2d 212(1987). Accordingly, summary judgment is appropriate only where: (1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party. *Tokles & Son, Inc. v. Midwestern Indemn. Co.* 65 Ohio St.3d 621, 629, 605 N.E.2d 936 (1992), *citing Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 65-66, 375 N.E.2d 46 (1978).

{¶41} Appellate review of summary judgments is de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996); *Smiddy v. The Wedding Party, Inc.*, 30 Ohio St .3d 35,506 N.E.2d 212(1987). We stand in the shoes of the trial court and conduct an independent review of the record. As such, we must affirm the trial court's judgment if any of the grounds raised by the movant at the trial court is found to support it, even if the trial court failed to consider those

grounds. *See Dresher, supra; Coventry Twp. v. Ecker*, 101 Ohio App.3d 38, 41-42, 654 N.E.2d 1327 (9th Dist. 1995).

**A. Waiver.**

**{¶42}**   At the outset, we note that Appellants failed to timely and properly file an Answer in the case at bar.  We note Civ.R. 8(C) states in pertinent part:

> In pleading to a preceding pleading, a party shall set forth affirmatively accord and satisfaction, arbitration and award, assumption of risk, contributory negligence, discharge in bankruptcy, duress, estoppel, failure of consideration, want of consideration for a negotiable instrument, fraud, illegality, injury by fellow servant, laches, license, payment, release, res judicata, statute of frauds, statute of limitations, *waiver*, and any other matter constituting an avoidance or affirmative defense. ***."

(Emphasis added).  Under Civ.R. 8(C), a defendant is required to affirmatively set forth matters that will effectively preclude a finding of liability on the part of the defendant.  Failure to raise such defenses in a responsive pleading or motion will constitute a waiver of those defenses." *Wemer v. Walker,* 5th Dist. Knox No. 12CA17, 2013-Ohio-2005, ¶8.

**{¶43}**  Prior to the start of trial, the Appellee waived its motion for default judgment and requested the matter proceed to a jury trial.  (1T. at 50).  The trial court further ruled that the Appellees would not be permitted to make arguments concerning affirmative defenses of waiver or contributory negligence because they were not plea in accordance with Civ.R. 8.  (1T. at 51).

**{¶44}**  The Appellant has not separately assigned as error or argued that the trial court's express finding that Appellant has waived the argument of Appellee's waiver of a malpractice

claim by settling with Joan Ellis in probate proceedings was in error. Appellants cannot circumvent the trial court's express ruling that Appellants waived this argument by seeking to nullify the trial court's ruling on Appellant's motion for summary judgment.

{¶45} However, the result does not change if we review the trial court's decision of Appellants' motion for summary judgment.

**B. The trial court's decision.**

{¶46} In overruling the Appellant's motion for summary judgment of the issue of appellee's waiver, the trial court found,

> Defendants next argue that Plaintiff waived her right to pursue a legal malpractice claim against them by entering into a settlement agreement with Ms. Ellis in the context of their probate litigation. According to Defendants, Plaintiff already had "a full and fair opportunity to challenge Ellis's positions" in the probate litigation but declined to do so. (MSJ at 7). Specifically, Defendants assert that "enforcement of the Antenuptial Agreement against Ellis was highly likely, but the Estate knowingly and voluntarily waived its ability to gain such a judicial determination." (MSJ at 6). Therefore, Defendants ask the Court to preclude Plaintiff from pursuing its malpractice claim in this Court. The Court declines to do so.
>
> Defendants rely exclusively on the case of *Estate of Callahan v. Allen,* 97 Ohio App. 3d 749 (1994) in support of its argument, In *Callahan,* a probate attorney allegedly provided inaccurate advice to an estate with regard to inheritance disclaimers and tax deductions. The estate subsequently entered into a settlement agreement with the IRS instead of

appealing the issue. The *Callahan* court held that the estate had waived any malpractice claim against the probate attorney, as the tax appeals board could have interpreted the IRS provisions differently and, in essence, found that the attorney's advice was actually sound. Therefore, the estate failed to establish proximate cause, i.e., that the estate would have prevailed in the IRS action but for the attorney's negligence.

First, the Court notes that *Callahan*, a decision by the Fourth District Court of Appeals is not binding on this Court. Second, the Court finds *Callahan* is distinguishable from the case-at-hand in one important aspect: the malpractice alleged in *Callahan* "arose in the course of strategic decisions made by the attorney," and the estate had not shown that the attorney's interpretations of the tax provisions were clearly unreasonable or unsupported by law. *See DePugh v. Sladoje*, 111 Ohio App. 3d 675, 686, 676 N.E.2d 1231 (1996) (recognizing this distinction). Here, Defendants can hardly argue that their disregard of the Testator's wishes was a "strategic decision": it is alleged that Defendants blatantly ignored the Testator's wishes and sloppily drafted a Will that expressly contradicted them.

Third, the Court disagrees with Defendants' position that if the Antenuptial Agreement was presented to a court for determination, its enforcement "against Ellis was highly likely," and no malpractice claim would exist. (MSJ at 6). Defendants appear to forget that the Antenuptial Agreement contains two relevant clauses, One provision in the Agreement

stated that Ms. Ellis renounced, waived, and relinquished all spousal, dower, and inheritance rights to any real property then owned by the Testator. But this provision was subject to another: one that gave Testator the overriding authority to bequeath real property to whomever he chose, including Ms. Ellis. Thus, even if a court had found the Antenuptial Agreement enforceable, the issue of whether Ms. Ellis was entitled to the Testator's residence would still depend on the provisions of the Testator's Last Will and Testament, i.e., the basis of Plaintiff's malpractice claim.

For these reasons, Defendants' second argument is not well-taken.

*Entry and Order,* filed Aug. 14, 2017 at 7-9 (Docket Entry #37).

### ISSUE FOR APPEAL.

1). Whether after independent review of the record Appellee waived her right to pursue a legal malpractice claim against Appellant by entering into a settlement agreement with Ms. Ellis in the context of their probate litigation.

{¶47} On appeal, Appellants again assert that enforcement of the Antenuptial Agreement against Ellis was highly likely, but the Estate knowingly and voluntarily waived its ability to gain such a judicial determination.

{¶48} Appellants' argument is somewhat disingenuous. Moore instructed Michalski to draft a Will leaving the Property to his children. Because of sloppy draftsmanship and sloppy proofreading, Michalski betrayed the wishes of his client by bequeathing the Property to an ex-wife of Moore. Nowhere does Appellant point to any part of the trial court record in which Michalski claimed that he purposely drafted the Will to leave the Property to Ellis in a strategic, well-reasoned legal

decision to rely on the Antenuptial Agreement to effectuate Moore's intent that the Property go to his children.

**{¶49}** The Antenuptial Agreement contains two relevant clauses. One provision in the Agreement stated that Ms. Ellis renounced, waived, and relinquished all spousal, dower, and inheritance rights to any real property then owned by the Testator. However, this provision was subject to another one that gave Testator the overriding authority to bequeath real property to whomever he chose, including Ms. Ellis. Thus, even if a court had found the Antenuptial Agreement enforceable, the issue of whether Ms. Ellis was entitled to the Testator's residence would still depend on the provisions of the Testator's Last Will and Testament, i.e., the basis of Appellee's malpractice claim.

A settlement entered into as a result of an attorney's exercise of reasonable judgment in handling a case bars a malpractice claim against the attorney. *DePugh v. Sladoje* (1996), 111 Ohio App.3d 675, 676 N.E.2d 1231. However, a legal malpractice claim is not barred when the attorney has acted unreasonably or has committed malpractice per se. Id. "[W]hen an attorney has made an obvious error which seriously compromises his client's claim, and a settlement is on the table * * *, the client should not be forced to forgo the settlement offer as a condition of pursuing the attorney for malpractice." Id. *See, also, Monastra v. D'Amore* (1996), 111 Ohio App.3d 296, 676 N.E.2d 132 (where attorney's defective representation diminishes client's ability to reach a successful settlement or to succeed at trial, the settlement of the action should not imply a waiver of client's right to file legal malpractice action against the attorney).

*E.B.P., Inc. v. Cozza & Steuer*, 119 Ohio App.3d 177, 182, 694 N.E.2d 1376 (8th Dist. 1997).

**CONCLUSION.**

{¶50} In the case at bar, it was Michalski's malpractice that caused Moore to be in the Probate Court in the first place. Had Michalski drafted the Will in accordance with Moore's express instructions, Ellis would not have been in a position to claim ownership of the Property and no settlement would have been necessary. Thus, this is not a case in which the settlement and the malpractice claim was so intertwined that the issue of the reasonableness of the attorneys' actions was left unresolved by the settlements. Appellants' actions in the drafting of the Will were unreasonable.

{¶51} The trial court did not err in denying summary judgment and not instructing the jury on Appellee's waiver of a malpractice claim by settling with Joan Ellis in probate proceedings.

{¶52} Appellants' Sixth Assignment of Error is overruled.

{¶53} The judgment of the Fairfield County Court of Common Pleas is affirmed, in part and reversed in part. This case is remanded to the trial court for proceedings for proceedings in accordance with our opinion and the law.


By Gwin, J.,

Wise, John, P.J., and

Delaney, J., concur