[Cite as *White v. Sheridan*, 2022-Ohio-2418.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

Charlie White, Jr., Individually and as          :
Executor of the Estate of
Harold L. Clifford,                              :

         Plaintiff-Appellant,          :          No. 21AP-355
                                                            (C.P.C. No. 19CV-1735)
v.                                               :          (REGULAR CALENDAR)

Philip H. Sheridan, Jr., Administrator of        :
the Estate of Steve J. Edwards,
                                                 :
         Defendant-Appellee.
                                                 :

---

D E C I S I O N

Rendered on July 14, 2022

---

**On brief:** *Arenstein & Andersen Co., LPA, Eric R. McLoughlin*, and *Nicholas I. Andersen*, for appellant. **Argued:** *Eric R. McLoughlin*.

**On brief:** *Philip H. Sheridan, Jr.*, pro se. **Argued:** *Philip H. Sheridan, Jr.*

---

APPEAL from the Franklin County Court of Common Pleas

KLATT, J.

{¶ 1} Plaintiff-appellant, Charlie White, Jr., executor of the estate of Harold L. Clifford, appeals a judgment of the Franklin County Court of Common Pleas granting summary judgment in favor of defendant-appellee, Phillip H. Sheridan, Jr., administrator of the estate of Steve J. Edwards, on White's claim that Edwards engaged in legal

malpractice when providing estate-planning services to Clifford.[1]  White also appeals the denial of his motion for summary judgment on the same claim.  For the following reasons, we affirm the trial court's judgment in part and reverse it in part, and we remand this matter to the trial court.

{¶ 2}  In 2013, Edwards prepared two estate-planning documents for Clifford:  a transfer on death designation ("TOD") affidavit and a will.  The TOD affidavit named Clifford's daughter, Shirlene Lones, as the beneficiary who would receive title to Clifford's house upon his death pursuant to R.C. 5302.22 et seq.  The will also named Lones as the sole beneficiary.  Clifford executed both the TOD affidavit and the will.  Edwards recorded the TOD affidavit with the Franklin County Recorder in September 2013.

{¶ 3}  In the spring of 2018, Clifford telephoned Edwards to schedule a meeting.  Clifford explained on the telephone that he wanted "to take [his daughter] out of the will and to put his neighbor in the will." (Edwards Dep. at 42.)  Edwards then met with Clifford and Clifford's neighbor, Charlie White, Jr., at Clifford's house.  During that meeting, Edwards wrote in his notes, "Shirlene gets nothing[;] [n]ow wants Charlie White Jr. to inherit everything." (Ex. 1 at 47, Edwards Dep.)  Later, in his deposition, Edwards testified that his notes accurately summarized what Clifford told him during the meeting.  However, Edwards then backtracked, stating "[t]hat's how [he] wrote" down Clifford's words, but "what [Clifford] told" him was "Shirlene is out of the will and Charlie, his neighbor, is in the will in Shirlene's place." (Edwards Dep. at 34.)

{¶ 4}  After the meeting, Edwards drafted a new will for Clifford that removed Lones as the sole beneficiary and replaced her with White.  Edwards did not prepare a new TOD affidavit modifying or revoking the TOD affidavit recorded in September 2013.[2]  Clifford executed the new will in April 2018.  Edwards later corrected typographical errors in the will, and Clifford executed his final will on June 2, 2018.

---

[1] Edwards died during the pendency of this action.  In an agreed entry dated June 19, 2020, the trial court found that White's claim for legal malpractice survived Edwards' death and substituted Sheridan, the administrator of Edwards' estate, as the defendant.  For the sake of clarity, we will refer to defendant as "Edwards" throughout this decision.

[2] Pursuant to R.C. 5302.23(B)(5), "[t]he designation in a transfer on death designation affidavit of any transfer on death beneficiary may be revoked or changed at any time, * * * by the owner of the interest, * * * by executing and recording, prior to the death of the owner of the interest, * * * a new transfer on death designation affidavit pursuant to section 5302.22 of the Revised Code stating the revocation or change in that designation."

{¶ 5}   Clifford died on June 26, 2018.  White, who the will nominated as executor of Clifford's estate, hired Edwards to assist him in settling the estate.  On July 17, 2018, Edwards filed documents to have Clifford's will admitted to probate and White appointed as executor.  In the application for authority to administer Clifford's estate, Edwards listed the value of the real property owned by the estate at $104,400, which was the value of Clifford's house.  Edwards included the value of Clifford's house in determining the total value of the estate because he believed that the house was an asset of the estate.  Edwards also told White to pay the mortgage on Clifford's house if he did not want the lender to foreclose on the house.

{¶ 6}   On August 28, 2018, while visiting Edwards' office, Lones gave Edwards a copy of the TOD affidavit recorded in September 2013.  Up until that moment, Edwards had not recalled the existence of the TOD affidavit.  After Lones confronted Edwards with the TOD affidavit, Edwards had to tell White about it.  Edwards explained to White that a transfer of property pursuant to a TOD affidavit precluded the property from becoming part of the estate, so Lones would receive Clifford's house.[3]  To accomplish the transfer of the house, Lones filed with the Franklin County Recorder an affidavit of confirmation and a certified copy of Clifford's death certificate as required by R.C. 5302.222.

{¶ 7}   On February 27, 2019, White, acting individually and as executor of Clifford's estate, sued Edwards for legal malpractice.  White alleged that Edwards committed three primary acts of negligence, but this appeal concerns only one of the three.  According to White, Edwards acted negligently by causing Clifford's house to pass to Lones, when Clifford intended Lones to "get[ ] nothing" and White to "inherit everything."  (Ex. 1 at 47, Edwards Dep.)  In short, White asserted that, when Edwards provided legal services to Clifford in 2018, Edwards negligently failed to ascertain the existence of the TOD affidavit and advise Clifford regarding what he needed to do to modify or revoke it.

{¶ 8}   Edwards moved for summary judgment on the ground that White could not sue him for providing allegedly negligent legal services to Clifford because, as a general matter, an attorney is not liable to a third party for services performed on behalf of a client.  In an exception to this rule, a third party who is in privity with the client may assert a claim

---

[3] R.C. 5302.23(B)(9) provides, "[a]ny transfer on death of real property * * * that results from a transfer on death designation affidavit designating a transfer on death beneficiary is not testamentary.  That transfer on death shall supersede any attempted testate * * * transfer of that real property * * *."

for legal malpractice against the attorney. Edwards argued that, although White was a beneficiary of Clifford's will, White's beneficiary status did not render him in privity with Clifford, and thus, White could not sue for malpractice supposedly perpetrated against Clifford.

{¶ 9} White responded that he was not asserting his legal malpractice action in his capacity as a beneficiary, but as executor of Clifford's estate. Because an executor stands in the shoes of the testator, White contended he could assert Clifford's legal malpractice claim on behalf of the estate.

{¶ 10} White also moved for summary judgment on his legal malpractice claim. White submitted an affidavit of an expert witness, who testified that an attorney who prepares or changes a will has a duty to "[d]etermine the composition of the client's assets and the manner in which those assets are titled." (Hoover Aff. at ¶ 8(g).) The expert witness opined that Edwards breached his duty of care to Clifford when he failed to: (1) ask Clifford what his assets were and how they were titled; (2) review his client file from his 2013 representation of Clifford, which contained a copy of the TOD affidavit; and/or (3) review real estate records maintained on the Franklin County Recorder's website. *Id.* at ¶ 13, 16, 18. Moreover, according to the expert witness,

> [a] reasonably prudent attorney would advise the client that the existing TOD affidavit is not affected by a change in the Will, and the client should either execute and record a new TOD affidavit designating the beneficiary "who is to inherit everything," or execute and record a revocation of the existing TOD affidavit (posturing the real estate as a probate asset controlled by the new Will).

*Id.* at ¶ 18.

{¶ 11} White contended that because Clifford wanted him to "inherit everything," and Lones to receive "nothing," had Clifford known of the TOD affidavit, he would have wanted it modified or revoked so White would receive Clifford's house upon his death. Consequently, White asserted, Edwards' failure to realize the TOD affidavit existed and to advise Clifford about it resulted in damage to the estate. White presented evidence that, on the date of Clifford's death, the value of Clifford's house was $132,000 and the amount due on his mortgage was $53,498.05. White, therefore, requested damages in the amount of $78,501.95 ($132,000 - $53,498.05 = $78,501.95).

{¶ 12} Edwards opposed White's motion for summary judgment. Edwards, however, only repeated the arguments he had made in his own motion for summary judgment.

{¶ 13} In a judgment dated June 30, 2021, the trial court granted Edwards summary judgment and denied White summary judgment on the legal malpractice claim.

{¶ 14} White now appeals the June 30, 2021 judgment, and he assigns the following errors:

> [1.] The trial court erred by holding that White lacks standing in his capacity as the Executor of Clifford's Estate to assert the Negligent Estate Planning Claim against Edwards' Estate.
>
> [2.] The trial court erred by not granting summary judgment to Clifford's Estate on the Negligent Estate Planning Claim.
>
> [3.] The trial court erred by holding that White lacks standing in his individual capacity as the intended beneficiary of Clifford's Estate to assert the Negligent Estate Planning Claim against Edwards' Estate.

{¶ 15} On appeal, White challenges the trial court's decision to grant Edwards summary judgment and deny him summary judgment. A trial court must grant summary judgment under Civ.R. 56 when the moving party demonstrates that: (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion when viewing the evidence most strongly in favor of the nonmoving party, and that conclusion is adverse to the nonmoving party. *Hudson v. Petrosurance, Inc.*, 127 Ohio St.3d 54, 2010-Ohio-4505, ¶ 29; *Sinnott v. Aqua-Chem, Inc.*, 116 Ohio St.3d 158, 2007-Ohio-5584, ¶ 29. Appellate review of a trial court's ruling on a motion for summary judgment is de novo. *Hudson* at ¶ 29. This means that an appellate court conducts an independent review, without deference to the trial court's determination. *Zurz v. 770 W. Broad AGA, LLC*, 192 Ohio App.3d 521, 2011-Ohio-832, ¶ 5 (10th Dist.); *White v. Westfall*, 183 Ohio App.3d 807, 2009-Ohio-4490, ¶ 6 (10th Dist.).

{¶ 16} The party moving for summary judgment bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Dresher v. Burt*,

75 Ohio St.3d 280, 293 (1996). The moving party does not discharge this initial burden under Civ.R. 56 by simply making conclusory allegations. *Id.* Rather, the moving party must affirmatively demonstrate by affidavit or other evidence allowed by Civ.R. 56(C) that there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Id.* If the moving party meets its burden, then the nonmoving party has a reciprocal burden to set forth specific facts showing that there is a genuine issue for trial. Civ.R. 56(E); *Dresher* at 293. If the nonmoving party does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party. *Id.*

{¶ 17} By his first assignment of error, White argues that the trial court erred in determining that, as executor of Clifford's estate, he lacked standing to sue Edwards for legal malpractice allegedly committed against Clifford. We agree.

{¶ 18} "[A]ttorneys in Ohio are not liable to a third party for the good-faith representation of a client, unless the third party is in privity with the client for whom the legal services were performed." *Shoemaker v. Gindlesberger*, 118 Ohio St.3d 226, 2008-Ohio-2012, ¶ 9. In the estate-planning context, this rule, called the strict privity rule, protects the attorney's duty of loyalty to and effective advocacy for the client. *Id.* at ¶ 14. The potential of malpractice liability to third parties would create a conflict during the estate-planning process, dividing an attorney's loyalty between his client and third-party beneficiaries. *Id.* at ¶ 15. Thus, the Supreme Court of Ohio has adhered to the strict privity rule to ensure that attorneys may represent their clients without the threat of suit from third-party beneficiaries who may compromise that representation. *Id.* at ¶ 14.

{¶ 19} However, there is a need for attorney accountability in the area of estate planning. When an attorney's malpractice is not discovered until after the client dies, neither the deceased client nor the third-party beneficiary may pursue a legal malpractice action. If no one can pursue such an action, then the attorney is afforded de facto immunity for negligence.

{¶ 20} In *Shoemaker*, the Supreme Court recognized what "may well be a solution to the problem:"

> Other courts have suggested that a testator's estate or a personal representative of the estate might stand in the shoes of the testator in an action for legal malpractice in order to meet the strict privity requirement. * * * These cases have

suggested that the claims should be brought in the name of
the estate.

*Id.* at ¶ 17.  The *Shoemaker* court did not endorse this approach, finding it "a question for another day," because the appellants had not raised it.  *Id.*  The appellants had instead sued as third-party beneficiaries and urged the court to abandon strict privity, which the court refused to do.

{¶ 21} In the case at bar, White seeks to implement *Shoemaker's* potential "solution" by bringing a legal malpractice claim against Edwards as the executor of Clifford's estate.  For White to succeed, we first must address whether Clifford's claim for legal malpractice survives his death.

{¶ 22}  Pursuant to R.C. 2305.21, "[i]n addition to the causes of action which survive at common law, causes of action for mesne profits, or injuries to the person or property, or for deceit or fraud, also shall survive; and such actions may be brought notwithstanding the death of the person entitled or liable thereto."  Construing this statute, the Supreme Court of Ohio determined that a client's action for legal malpractice survives the death of a defendant attorney.  *Loveman v. Hamilton*, 66 Ohio St.2d 183 (1981), syllabus.  An action for legal malpractice survives because such a cause of action survived at common law and legal malpractice constitutes an injury to the client's property.  *Id.*

{¶ 23}  In *Loveman*, unlike in this case, the court was focused on whether a cause of action for legal malpractice survived the defendant attorney's death.   R.C. 2305.21, however, dictates when causes of action survive the death of the person "liable thereto" (in a legal malpractice action, the attorney) *and* "the person entitled" to bring the action (the client).  The holding of *Loveman*, consequently, also applies when a client dies, mandating that, under R.C. 2305.21, a cause of action for legal malpractice survives the client's death. *Moore v. Michalski*, 5th Dist. No. 17-CA-44, 2018-Ohio-3021, ¶ 23; *Hosfelt v. Miller*, 7th Dist. No. 97-JE-50 (Nov. 22, 2000).  Therefore, pursuant to R.C. 2305.21, Clifford's claim for legal malpractice survived his death.

{¶ 24} We thus turn to the question of whether an executor of an estate shares privity with the testator so that the executor may sue for legal malpractice committed against the testator during the testator's lifetime.   Privity is " '[t]he connection or relationship between two parties, each having a legally recognized interest in the same

subject matter.' " *Shoemaker*, 118 Ohio St.3d 226, 2008-Ohio-2012, at ¶ 10, quoting *Black's Law Dictionary* 1237 (8th Ed.2004). In other words, "[w]ith regard to privity, '[f]or legal malpractice purposes, privity between a third person and the client exists where the client and the third person share a mutual or successive right of property or other interest.' " *Ryan v. Wright*, 10th Dist. No. 06AP-962, 2007-Ohio-942, ¶ 9, quoting *Sayyah v. Cutrell*, 143 Ohio App.3d 102, 111-12 (12th Dist.2001).

{¶ 25} A personal representative of the decedent's estate stands in the shoes of the decedent. *LaMusga v. Summit Square Rehab, LLC*, 2d Dist. No. 26641, 2015-Ohio-5305, ¶ 54. Consequently, a personal representative may assert, in a representative capacity, any cause of action the decedent could have instituted and which survives the decedent. *Hosfelt*; *accord Moore* at ¶ 34 ("[T]he personal representative of a decedent's estate stands in the shoes of the decedent to assert claims on behalf of the estate."); *Meisler v. Weinberg*, 8th Dist. No. 105016, 2017-Ohio-1563, ¶ 13 ("[I]t has been recognized that 'a personal representative of a decedent's estate stands in the shoes of the decedent to assert claims on behalf of the estate.' "); *Williams v. Barrick*, 10th Dist. No. 08AP-133, 2008-Ohio-4592, ¶ 10, quoting *Hosfelt* (" '[A] personal representative of a decedent's estate stands in the shoes of the decedent to assert claims on behalf of the estate.' ").

{¶ 26} Because the personal representative assumes the right to prosecute any surviving cause of action after the decedent's death, the personal representative's right to sue succeeds the decedent's right to sue. The personal representative, therefore, is in privity with the decedent. Consequently, a personal representative may bring a cause of action for legal malpractice on behalf of the estate for negligent estate planning that occurred during the decedent's lifetime.

{¶ 27} As the Supreme Court of Ohio recognized in *Shoemaker*, 118 Ohio St.3d 226, 2008-Ohio-2012, at ¶ 17, courts outside of Ohio have used this reasoning to reach the same conclusion. *See Schneider v. Finmann*, 15 N.Y.3d 306, 309 (2010) (finding the necessary privity existed to allow a personal representative of an estate to raise a negligent estate-planning claim against the attorney who caused harm to the estate); *Belt v. Oppenheimer, Blend, Harrison & Tate, Inc.*, 192 S.W.3d 780, 787 (Tex.2006) (holding "because the estate 'stands in the shoes' of a decedent, it is in privity with the decedent's estate-planning attorney and, therefore, the estate's personal representative has the capacity to maintain

the malpractice claim on the estate's behalf"); *Stanley L. & Carolyn M. Watkins Trust v. Lacosta*, 321 Mont. 432, 2004 MT 144, ¶ 19 ("Because the Estate stands in the shoes of the decedent, it is considered to be in privity with the attorney, and the personal representative has standing to prosecute a malpractice claim."); *Noble v. Bruce*, 349 Md. 730, 758-59 (1997) (holding that "a testator's estate might stand in the shoes of the testator and meet the strict privity requirement," thus allowing a "testator's estate [to] have an attorney malpractice action for negligent acts committed by the attorney while representing the testator"); *Espinosa v. Sparber*, 612 So.2d 1378, 1380 (Fla.1993) (holding that an estate could maintain a legal malpractice action against the decedent's attorney because the estate "stands in the shoes of the testator and clearly satisfies the privity requirement").

{¶ 28} Applying the foregoing to this case, we determine that Clifford's cause of action for legal malpractice survived his death, and White, in his capacity as executor of Clifford's estate, is in privity with Clifford. White, therefore, may sue Edwards for legal malpractice based on his allegedly negligent estate planning. Accordingly, we conclude that the trial court erred in granting Edwards summary judgment on that claim, and we sustain Clifford's first assignment of error.

{¶ 29} By White's second assignment of error, he argues that the trial court erred in denying him summary judgment on the legal malpractice claim. We disagree.

{¶ 30} To establish a cause of action for legal malpractice, a plaintiff must prove the existence of an attorney-client relationship giving rise to a duty, a breach of that duty, and damages proximately caused by that breach. *Ratonel v. Roetzel & Andress, L.P.A.*, 147 Ohio St.3d 485, 2016-Ohio-8013, ¶ 6. Here, White argues that Edwards breached his duty to Clifford by failing to ascertain the existence of and advise Clifford about the 2013 TOD affidavit. White contends that had Clifford known about the 2013 TOD affidavit, he would have revoked it or modified it so that White would receive Clifford's house. White, therefore, claims damages in the amount of the equity Clifford had in his house on the date of his death.

{¶ 31} The trial court essentially conflated its consideration of the parties' motions for summary judgment. It concluded that White lacked standing to assert legal malpractice against Edwards because White could not prove that Edwards' alleged negligence caused damage to the estate, as opposed to White himself. More simply, the trial court found

because there was no evidence of damage to the estate, White could not sue Edwards. As we explained above, the ability to sue turns on privity, which White has established. We thus turn to the separate issue of whether White has provided the necessary evidence of damage to prove legal malpractice.

{¶ 32} Because White is suing as executor of Clifford's estate, he can only recover damages that Edwards' negligence caused the estate. Therefore, to recover damages in the amount of Clifford's home equity, White must prove that Clifford intended his house to pass by devise under his will, and not through a TOD affidavit. If Clifford intended to include the house in his will, then the absence of that asset from the estate lessened the estate's value, causing the estate damage. But, if Clifford intended, instead, that his house transfer by TOD affidavit, then the value of Clifford's estate would remain undiminished, and White could not collect damages based on the value of Clifford's house.

{¶ 33} The trial court concluded that the record contained no evidence that Clifford intended his house to pass through his estate, as opposed to a TOD affidavit. While the record contains no direct evidence of Clifford's intent, it includes circumstantial evidence from which a reasonable finder of fact could infer that intent. Clifford allegedly told Edwards that he wanted to White to "inherit everything" and directed Edwards to make White the sole beneficiary to Clifford's will. A reasonable finder of fact could deduce from that evidence that Clifford intended his assets, including the house, to pass to White via probate. Indeed, after Clifford's death, Edwards himself believed that Clifford's house was an estate asset and would transfer to White under the terms of Clifford's will. On the other hand, based on the fact that Clifford had previously executed a TOD affidavit to transfer his house, a reasonable finder of fact could conclude that Clifford intended that White receive his house—as part of "inherit[ing] everything"—via a TOD affidavit.

{¶ 34} Alternatively, a reasonable finder of fact could conclude from the evidence that Clifford intended his house to transfer to Lones by TOD affidavit. According to Edwards, Clifford only directed him to revise his will, not the TOD affidavit. A reasonable finder of fact could determine that, by seeking to remove Lones from the will, Clifford merely wanted to deprive Lones of the assets she would have inherited as a testamentary beneficiary. Clifford could have intentionally retained Lones as the beneficiary designated on the TOD affidavit.

{¶ 35} Given that reasonable finders of fact could construe the evidence differently, we conclude that a question of fact remains regarding Clifford's intent and, thus, whether White, on behalf of the estate, may recover damages for Edwards' alleged malpractice in the amount of Clifford's home equity. Because a question of fact still exists regarding the whether the estate sustained damage, the trial court properly denied White summary judgment. Accordingly, we overrule White's second assignment of error.

{¶ 36} By White's third assignment of error, he argues that the trial court erred in concluding he lacked standing to sue Edwards for legal malpractice in his capacity as the sole beneficiary of Clifford's will. We disagree.

{¶ 37} Again, pursuant to the strict privity rule, "attorneys in Ohio are not liable to a third party for the good-faith representation of a client, unless the third party is in privity with the client for whom the legal services were performed." *Shoemaker*, 118 Ohio St.3d 226, 2008-Ohio-2012, at ¶ 9. White recognizes that, in his capacity as sole beneficiary under Clifford's will, he lacks privity with Clifford. White, however, contends that the strict privity rule should be overruled so that he may sue Edwards regardless of the lack of privity. As an intermediate appellate court, this court is bound to follow the precedent of the Supreme Court of Ohio. *State v. Tatom*, 10th Dist. No. 17AP-758, 2018-Ohio-5143, ¶ 24. Under that precedent, the strict privity rule prevails and precludes White from suing Edwards in his capacity as beneficiary of the will. Accordingly, we overrule White's third assignment of error.

{¶ 38} For the foregoing reasons, we sustain the first assignment of error, and we overrule the second and third assignments of error. We affirm the judgment of the Franklin County Court of Common Pleas in part and reverse it in part, and we remand this matter to the trial court for further proceedings consistent with law and this decision.

*Judgment affirmed in part, reversed in part;*
*cause remanded.*

JAMISON and NELSON, JJ., concur.

NELSON, J., retired, of the Tenth Appellate District, assigned
to active duty under authority of Ohio Constitution, Article IV,
Section 6(C).